MUTUAL HOSPITAL INSURANCE, INC. AND MUTUAL MEDICAL
INSURANCE, INC. *v.* ROSE MACGREGOR

[No. 2-276A51. Filed November 10, 1977.]

*Steven G. Cracraft, Kothe, Shotwell, Claycombe, Hendrickson
& Kortepeter,* of Indianapolis, for appellants.

*M. Daniel Friedland,* of Indianapolis, for appellee.

LYBROOK, J.—Appellants Mutual Hospital Insurance, Inc. (Blue
Cross) and Mutual Medical Insurance, Inc. (Blue Shield) bring this
appeal from a judgment in favor of appellee, Rose MacGregor, on
their complaint on an insurance policy.[1]

---

1.  This case was transferred to this office from the Second District in order to
help eliminate the disparity in caseloads among the Districts.

On February 13, 1971, Rose MacGregor was involved in an automobile accident caused by the alleged negligent conduct of Vincent Bryant. As a result of the accident, Mrs. MacGregor sustained multiple injuries and incurred expenses for medical attention and hospitalization in the sum of $5,168.58. At the time of the accident, Mrs. MacGregor was insured under a Master Policy for hospital, surgical and medical benefits issued by Blue Cross-Blue Shield to Wright Tool & Die Company. By reason of the injuries sustained by Rose MacGregor, Blue Cross-Blue Shield paid on her behalf the total sum of $5,168.58 for hospital, surgical and medical expenses under the Master Policy.

On the date of the accident, Bryant, the operator of the other vehicle, had an automobile liability policy with Farmers Insurance Group. On April 10, 1972, Mrs. MacGregor, through her attorneys, entered into a settlement with Farmers Insurance Group, whereby Farmers paid to Mrs. MacGregor and her husband the sum of $10,000 in exchange for a written release in full of all claims and rights which the MacGregors might have against Bryant and Farmers Insurance Group. The sum of $10,000 was the maximum amount allowed under Bryant's liability coverage.

This litigation was commenced by Blue Cross-Blue Shield against Mrs. MacGregor on July 29, 1974, when Blue Cross-Blue Shield brought an action to recover the $5,168.58 which it had paid for Mrs. MacGregor's medical expenses. Blue Cross-Blue Shield based its complaint on Article X, the subrogation provisions of the Master Policy issued to Wright Tool and Die Company under which Mrs. MacGregor was covered at the time of the accident, which reads in pertinent part:

"In the event of any payment for services under this Policy, Blue Cross-Blue Shield shall, to the extent of such payment, be subrogated to all the rights of recovery of the Member or Dependent arising out of any claim or cause of action which may accrue because of the alleged negligent conduct of a third party. Any such Member or Dependent hereby agrees to reimburse Blue Cross-Blue Shield, for any benefits so paid hereunder, out of any monies recovered from such third party as the result of judgment, settlement or otherwise; and such

Member or Dependent hereby agrees to take such action, to furnish such information and assistance, and to execute and deliver all necessary instruments as Blue Cross-Blue Shield may require to facilitate the enforcement of their rights. This provision shall not apply, however, to a recovery obtained by a Member or Dependent from any insurance company on a policy under which said Member or Dependent is entitled to indemnity as a named insured person."

The Abstract of Benefits, a copy of which was provided to all employees of Wright Tool & Die Company who were members under the Master Policy, contains the following clause under Section V:

"In the event of any payment for services under this policy, Mutual Hospital Insurance, Inc. shall be subrogated to all the rights of recovery for expenses incurred of the covered individual against any person or organization, except against insurors on policies of insurance issued to and in the name of the covered individual, and the latter shall execute and deliver such instruments and papers as may be required and do whatever else is necessary to secure such rights."

Numerous motions and responsive pleadings were filed in this action, with the case coming to trial on August 26, 1975. On September 9, 1975, the trial court made the following Special Findings of Fact and Conclusions of Law, which in pertinent part read:

### "SPECIAL FINDINGS OF FACTS"

\* \* \*

"7. The Blue Cross policies in question contain a paragraph which reads in substance as follows: *Subrogation* — 'In the event of payment for services under this policy the corporation (plaintiffs) shall, to the extent of such payment, be subrogated to all rights of recovery of the member — arising out of any claim or cause of action which may accrue because of alleged negligent conduct of third party. Any such member — hereby agrees to reimburse the corporation for any benefits so paid hereunder, out of any monies recovered from such third party as the result of — settlement or otherwise — .'

"8. On April 10, 1972, Rose MacGregor and her husband, Robert C. MacGregor (now deceased), made a settlement with

the tortfeasor, Vincent Bryant, through his insurance company, in the sum of $10,000.00, which was the full amount of Bryant's insurance coverage.

"9.   Upon payment of the $10,000 referred to above, both of the MacGregors executed a 'Release In Full of All Claims and Benefits' — 'releasing and discharging Vincent Bryant from any and all rights, claims, demands and damages of any kind — resulting from or related to personal injuries — arising from an accident that occurred on or about 13 February 1971 — .

"10.   While it is not within the province of this Court to determine the adequacy of the settlement agreement between the MacGregors and the tortfeasor, Bryant, the seriousness of Rose MacGregor's injuries; her extended hospitalization; the size of her medical, hospital and doctors' bills without considering any loss of services on the part of her husband, Robert C. MacGregor; her complete inability to work from the time of the accident to the present and her attendant loss of wages as a result thereof; the permanency of her injury; plus her pain and suffering would seem to indicate that the acceptance of the settlement of $10,000 was necessitated only by the fact that such sum was the full extent of the insurance coverage available under the tortfeasor's policy and by the additional fact that any amount over the sum would be uncollectable since Bryant did not have personal assets to satisfy any judgment in excess of this sum.

"11.   The settlement check for $10,000 was made out to 'Robert C. MacGregor and Rose M. MacGregor, individually and as husband and wife and Yockey and Yockey, their attorneys' — the latter name being that of the firm of attorneys who negotiated the settlement for the MacGregors with the tortfeasor's insurance company. This firm of attorneys received a portion of this check as compensation for their work and effort in effecting this settlement.

"12.   The receipt of this sum of money gave no indication of unjust enrichment on the part of the MacGregors, nor indicated that they had received full satisfaction for all of their injuries and damages; in fact it seems to indicate just the contrary."

## "CONCLUSIONS OF LAW"

"1.   The law is with the defendant, Rose MacGregor.

"2. There is no evidence before the Court from which it can be determined that the subrogation claim of the plaintiffs in the sum of $5,163.58 was or was not included in the settlement made by both MacGregors for damages and personal injuries.

"3. 'Damages' is that sum of money which is paid by one person to another as compensation for a loss sustained by the latter in consequence of an injury committed by the former.

"4. The damages in this case for which the MacGregors were compensated would undoubtedly consist of many items too numerous to be set out here, and may or may not include medical bills, hospital expenses and doctors' bills, since the phraseology of the release is so overbroad as not to specify the exact damages for which it was given.

"5. The plaintiffs, having failed to produce the necessary evidence as to material facts, are not entitled to recover against the defendant on its complaint.

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiffs, Mutual Hospital Insurance, Inc. and Mutual Medical Insurance, Inc., recover nothing from the defendant, Rose MacGregor, on its complaint; and further that the counterclaimant, Rose MacGregor, recover nothing from the plaintiffs on her counterclaim; the costs of this action to be assessed against each party on its pleadings.

"All of which is accordingly done this 9th day of September, 1975.

"/s/ J.N. Myers, Judge
Municipal Court #1"

On November 6, 1975, Blue Cross-Blue Shield filed its Motion to Correct Errors, and Brief in Support of Motion to Correct Errors. The trial court overruled Blue Cross' motion on November 14, 1975, and Blue Cross-Blue Shield filed its Praecipe for Record of the Proceedings for the purpose of perfecting this appeal.

Appellant Blue Cross-Blue Shield is appealing from a negative judgment and this court need only decide whether the decision of the trial court was contrary to law. To determine this question, we will consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn therefrom. It is only where the

evidence is without conflict and leads to only one conclusion and the trial court reached a contrary conclusion that the decision will be disturbed as contrary to law. *Newkirk v. Rothrock* (1973), 155 Ind. App. 503, 293 N.E.2d 550.

Appellant alleges that the decision of the trial court was contrary to law for the following reasons:

(1) because the trial court failed to give effect to the unambiguous contractual provision which required the insured to reimburse Blue Cross-Blue Shield out of any monies received from a third party;

(2) because the trial court failed to hold that a full and final release of all claims included a release of claims for medical expenses and that the issue of what the settlement between the insured and the third party consisted of is an affirmative defense under TR. 8(C), which must be specifically and affirmatively pleaded by the insured and upon which she had the burden of proof;

(3) because the uncontradicted evidence established that medical expenses were in fact included in the settlement between the insured and the negligent third party; and

(4) because findings of fact Nos. 10, 11 and 12 are contrary to and not supported by the evidence.

"An insurance policy is a contract and the rules governing the construction of contracts generally apply to the construction of a policy or contract of insurance." 16 I.L.E. Insurance § 101, p. 239.

Indiana courts recognize that insurance companies have a legal right to write subrogation agreements in their policies. *Cook v. American States Insurance Co.* (1971), 150 Ind. App. 88, 275 N.E.2d 832.

In the case of *Imel v. Travelers Indemnity Company* (1972), 152 Ind. App. 75, 281 N.E.2d 919, this court set forth the differences between assignment of claims for personal injuries and subrogation of one's rights arising from a personal injury. In *Imel*, the court recognized that subrogation rested on a contractual duty to pay; that there was no "unjust enrichment" to the insurance

company for collecting the premiums and the monies due to Imel (the insured) for his medical payments, and that it was the insured who would be unjustly enriched where he collects from the tortfeasor as well as the insurance company.

Under the Master Policies, which are contracts binding on Mrs. MacGregor, the elements necessary to make a prima facie case for recovery are that a policy was in force, that Mrs. MacGregor was an eligible member, that Blue Cross-Blue Shield paid a specific sum for medical expenses under the policies, that Mrs. MacGregor's injuries were the result of the negligent actions of a third party, and that Rose MacGregor recovered monies in excess of the amounts paid by Blue Cross-Blue Shield from the negligent third party in settlement of her claims. A review of the transcript shows that appellant have established each of these elements and thus have made a prima facie case for recovery under the insurance contract.

In *Jordan v. John Hancock Mutual Life Insurance Company*, 222 F.2d 210, (7th Cir. 1955), the U.S. Court of Appeals held that under Indiana law, contracts of insurance are similar to other contracts in that they must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense.

> "It is not the purpose of the law to abrogate the terms and provisions of contracts by construction where the language is clear and unambiguous but rather to enforce it as entered into by the parties. * * *
>
> A court is not at liberty to revise a contract while professing to construe it. Neither does it have the right to make a contract for the parties, that is, a contract different from that actually entered into by them. * * *" (Citations by Court omitted).

*McClain's Estate v. McClain* (1962), 133 Ind. App. 645, 183 N.E.2d 842 at 848.

*See also Ely v. State Farm Mutual Automobile Insurance Co.* (1971), 148 Ind. App. 586, 268 N.E.2d 316, 320.

The "Release in Full of All Claims and Rights," signed by the MacGregors, which discharged the alleged tortfeasor, his

insurance company and others, was acknowledged to be a settlement of *all* of the MacGregors' claims. For the trial court to conclude that this settlement "may or may not" have included expenses is to read in ambiguity where none, in fact, exists.

Blue Cross-Blue Shield has demonstrated that it fulfilled its part of an insurance contract by paying $5,163.58 of medical expenses on behalf of an enrolled policy member. Blue Cross-Blue Shield did not take part in the negotiations of the settlement nor in the preparation of its final language. Blue Cross-Blue Shield was not advised that its member was involved in such negotiation.

In *State Farm Mutual Automobile Insurance Company v. Mid-Century Insurance Company* (1970), 147 Ind. App. 258, 259 N.E.2d 424, this court refused to reverse a negative judgment where there was no showing that the subrogation payment was included in the amount of the settlement paid to the insured; nor was there any evidence in the record establishing what items made up the total settlement.

Here, the record includes the testimony of the agent, who represented Farmers Insurance Group at the negotiation of the settlement with the MacGregors, as well as Mrs. MacGregor's own acknowledgement that the settlement included payment for medical expenses. A portion of the testimony of Dwight Williams, claims representative of Farmers Group Insurance reads:

"Q. Did they make demand upon you as the insurer for Vincent Bryant for a settlement—a monetary settlement with regard to the injuries sustained by Rose MacGregor in that accident?

A. Yes.

Q. And in conjunction with that demand were you furnished by counsel for Rose MacGregor—a —*copies of the medical expenditures* that were made on her behalf as a result of that accident?

A. Yes.

Q. Were you also furnished with copies—ah—records indicating the lost wages as a result of that accident?

A. I can't answer that question. I only know that she was employed—ah—we probably were, but if we weren't, I don't think it would have made that much difference in the case so far as our settlement was concerned.

Q. *But you definitely did receive the copies of the medical expenses made upon her behalf for injuries in that case?*

A. *Yes, sir.*

Q. *And you took those into consideration in reaching a settlement with Rose MacGregor?*

A. *Yes, sir."* (Emphasis added).

On cross examination, Mr. Williams was asked if there was any specific allocation as to how much money goes for medical expenses, to which he responded that Farmers Insurance Group allocates in its write ups the amount of money that is set aside for medical and the amount of money that is set aside for lost wages. Farmers Insurance Group simply lists the medical specials and the wage specials and other out-of-pocket expenses. Mr. Williams further testified that there was no standard procedure in the trade for evaluating personal injury claims. Although Farmers Insurance Group lists only medical expenses and lost wages, its settlements are not based solely on out-of-pocket expenses.

Mrs. MacGregor's testimony includes the following exchange:

"Q. And as a result of that accident you were hospitalized, is that correct?

A. Yes.

Q. And Blue Cross-Blue Shield paid the expenses of your hospitalization, is that correct?

A. Yes.

Q. And did you obtain an attorney and make demand upon the insurance carrier of Vincent Bryant *for a settlement for your injuries and of medical expenses?*

A. Yes." (Emphasis added).

Mrs. MacGregor offered no affirmative defenses challenging the validity of the insurance contracts or the makeup of the settlement received. The evidence is totally uncontradicted that Blue Cross-Blue Shield paid her medical expenses under the Master Policies held by Wright Tool and Die, and that she received a $10,000 settlement from the insurance company of the party who allegedly caused her injuries. The release signed by Mrs. MacGregor precluded Blue Cross-Blue Shield from taking any action to recover the amounts which it had expended in Mrs. MacGregor's behalf from the original tortfeasor and his insurance company.

In light of the foregoing, we find that the evidence is without conflict and leads to only one conclusion which is contrary to that reached by the trial court. We therefore reverse this cause and remand it to the trial court for additional proceedings not inconsistent with this opinion.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 368 N.E.2d 1376.