Bernard J. SELL, Appellant–Plaintiff,

v.

UNITED FARM BUREAU FAMILY
LIFE INSURANCE COMPANY,
Appellee–Defendant.

No. 49A02–9402–CV–48.

Court of Appeals of Indiana,
Second District.

March 13, 1995.

Rehearing Denied June 28, 1995.

Randolph A. Leerkamp, Carter & Leerkamp, Indianapolis, for appellant.

James W. Treacy, Sheila M. Flynn, Treacy Grossman & Sullivan, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Bernard Sell appeals the trial court's order of summary judgment entered in favor of United Farm Bureau Family Life Insurance Company (Farm Bureau) which determined that Farm Bureau was not under a duty to pay Sell certain medical benefits in accordance with a health care policy under which Sell was an insured.

We affirm.

Oral argument was held in Indianapolis on January 10, 1995.

The facts most favorable to Sell, the nonmoving party, are that Sell suffered severe and permanent injuries in an automobile accident on May 21, 1988. He incurred medical expenses of nearly $90,000. Sell was insured under a Pro Care Health Policy with Farm Bureau which compensated him in the amount of $2559.50.

At the time of the accident, Sell was a passenger in an automobile driven by Richard Overdeer. Overdeer had an Allstate auto policy which contained medical payments coverage. Allstate paid $84,929.40 of Sell's medical bills. As a result of the Farm Bureau payment, the Allstate payment, and an amount of $4,680 paid by American Family Life Assurance Company, all of Sell's medical expenses were paid.

Overdeer was killed in the accident, and Sell opened Overdeer's estate for the sole purpose of pursuing legal action against it. Overdeer also had liability insurance coverage under the Allstate policy. The liability coverage was $250,000 which was reduced by the amount paid out in medical coverage.

Sell requested Farm Bureau to pay the entire medical expense, either to Allstate or to Sell, and to then pursue its subrogation rights. Farm Bureau refused, contending that it had no duty to pay because Allstate had accepted responsibility for, and had already paid, Sell's medical expenses. Farm Bureau also argued that Sell's request conflicted with the language in the insurance contract which provided Farm Bureau the right to first indemnify itself from any recovery received by Sell from Allstate.

Sell filed a complaint against Farm Bureau on December 11, 1990, seeking recovery of the medical expenses. He also alleged a claim for bad faith and punitive damages in two separate amended complaints. On January 2, 1992, Sell filed a motion requesting partial summary judgment on the question of whether Farm Bureau had a duty to pay Sell benefits for medical expenses which had already been paid by Allstate. The trial court denied the motion and approximately one year later, Farm Bureau filed its motion for summary judgment as to all issues. On October 14, 1993, the trial court granted Farm Bureau's motion and entered the following order:

> "Comes now the Defendant, by counsel, having filed its Motion for Summary Judgment, and the court being duly advised in the premises, now finds that the motion should be granted."

*Record* at 306.

Sell appeals and presents the following restated issues:

1. Did the trial court properly determine that Farm Bureau could deny payment of medical expenses to Sell because the bulk of those expenses had been paid by Allstate?

2. Did the trial court err in determining that Sell was not entitled to recover punitive damages from Farm Bureau?

### Standard Of Review

In summary judgment proceedings, the party moving for summary judgment must show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant establishes that no genuine issue of fact exists, the party opposing summary judgment must set forth specific facts indicating that there is a genuine issue in dispute. If the nonmoving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, *trans. denied.* Further, the party moving for summary judgment must designate to the trial court all parts of the matters included in the record that it relies on for the motion. The opposing party likewise must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind. Trial Rule 56(C). Any doubt as to the existence of a factual issue should be resolved against the moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630.

### 1.

Sell initially argues that Farm Bureau breached the insurance contract when it did not pay benefits within 45 days after it received the information necessary to determine liability, and points to the following language contained in the policy:

#### "CLAIMS PROVISIONS

*Time of Payment of Claims.* We will pay all benefits payable under this policy within forty-five (45) days after we receive all information required to determine liability under the terms of this policy."

*Record* at 54.

Sell also cites Ind.Code 27–8–5–19(a)(1) and (b)(11)(A) which provide that:

"(a) A policy of group accident and sickness insurance may not be delivered in Indiana unless it contains in substance:

(1) the provisions described in subsection (b); or

(b) ...

(11) A provision that:

(A) all benefits payable under the policy (other than benefits for loss of time) will be paid within forty-five (45) days after the insurer receives all information required to determine liability under the terms of the policy."

Farm Bureau relies upon the subrogation provision contained in the policy as a reason for denying payment of the medical expenses. The relevant portion of this provision states that:

"Subrogation.

Subrogation means our right to recover any benefit payments made by us.

1. because of an injury to a covered family member caused by a third party's wrongful act or negligence ...

which the covered family member recovers or may recover from the third-party, or employer *or the insurer of either.* . . .

2. *any recovery received from any third-party, employer or insurer will first be applied to indemnify us.* We are entitled to indemnification, to the extent of any payments we have made, *whether or not the recovery is in full satisfaction of the covered family member's claim, settlement, award or judgment* against the third-party, or employer or the insurer of either.

*This provision does not require us to pay any benefits before a settlement, award or judgment is entered in any claim or cause of action filed by or on behalf of the covered family member against the third-party or employer.*

*Record* at 53 (emphasis supplied).

The interpretation of an insurance contract is primarily a question of law for the court. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665; *Standard Mut. Ins. Co. v. Pleasants* (1994), Ind.App., 627 N.E.2d 1327. When construing an insurance policy, we

may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of the insurance contract. *American States Ins. v. Adair Indus.* (1991), Ind.App., 576 N.E.2d 1272. This court strives to ascertain and enforce the intent manifested in the policy. *American Family Mut. v. National Ins. Ass'n* (1991), Ind.App., 577 N.E.2d 969. If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. The fact that the parties disagree as to the interpretation of the contract does not establish an ambiguity; the contract is ambiguous only if it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning. *Id.; Standard Mut. supra.*

■ In examining the above subrogation provision, it is apparent from the language in the contract that Farm Bureau had no duty to pay any benefits before Sell settled his claim with Allstate. Sell had not settled at the time he made the request for payment in October, 1990. Because Sell subsequently accepted a medical bill settlement with Allstate in the amount of $81,365.20, it is clear that Farm Bureau has no duty to pay "benefits," inasmuch as *all* of Sell's expenses were paid within the Allstate policy limits.[1]

The Allstate policy provides that:
"There will be no duplication of payments made under the Bodily Injury Liability and Automobile Medical Payments coverages of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. The damages payable under the Bodily Injury Liability coverage of this policy will be reduced by that amount."

*Record* at 99.

Sell's argument that Allstate would not reduce the available liability limits if Farm Bureau had paid the medical expenses is misplaced. The plain language of the policy provides that any recovery received from a third party or insurer will be first applied to indemnify Farm Bureau. Any payment Farm Bureau made to Sell or Allstate would have resulted in a 100% recovery *directly from Sell.* Sell simply would not have benefited had Farm Bureau paid Allstate the medical expenses and then pursued its subrogation rights in an effort to recover *that same amount* of money from Allstate. There is no language contained in the Farm Bureau policy which would have required Farm Bureau to make payments of medical expenses which had previously been paid and accepted by Allstate.

The record before us reflects that Sell has no current outstanding medical expenses which have not already been paid by Farm Bureau, Allstate or American Family Life Assurance Company. Permitting Sell to collect from Allstate *and* his own insurer for the same medical expenses would result in unjust enrichment. *See Mutual Hosp. Ins., Inc. v. MacGregor* (1977), 174 Ind.App. 550, 368 N.E.2d 1376; *Imel v. Travelers Indem. Co.* (1972), 152 Ind.App. 75, 281 N.E.2d 919. "To permit the insured to receive payment from both the wrongdoer and the insurer would be to give him double compensation for his loss." *Hagerman v. Mutual Hosp. Ins., Inc.* (1978), 175 Ind.App. 293, 295, 371 N.E.2d 394, 395, *trans. denied; see also Standard Mut., supra.*

■ We also reject Sell's argument that Farm Bureau and the trial court are required to determine the percentage of Sell's total recovery that he received from Allstate by establishing Sell's comparative fault regarding the automobile accident.

Ind.Code 34–4–33–12 provides as follows:
"If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished:
    (1) by comparative fault; or
    (2) by reason of the uncollectibility of the full value of the claim for personal injuries or death resulting from limited liability insurance or from any other cause;

---

1. Allstate's liability limits were $250,000 per person and $500,000 each accident.

the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses."

The plain language of the above applies to situations when a lien arises because an insurer or other provider has already paid medical expenses and is subsequently attempting to recoup the amount already paid. We reject Sell's reliance on *Department of Pub. Welfare v. Couch* (1992), Ind., 605 N.E.2d 165, inasmuch as *Couch* outlined the parameters for a lienholder who attempts to collect the amount of his lien. Unlike the situation in *Couch*, the bills which Sell had initially incurred had been paid *before* he requested Farm Bureau to pay Allstate in October, 1990. Sell's reliance upon *Couch* is therefore misplaced.

Sell's argument is similar to that raised by the insured party in *Standard Mut., supra.* In that case, we determined that an insurance company was entitled to credit for payments it made under the medical payments coverage provision of its insured's policy in accordance with the uninsured motorist coverage of the policy.

The facts in *Standard Mutual* reveal that following an automobile accident, arbitration was conducted which determined that Pleasants's damages, without regard to fault, totaled $100,000. Pleasants was subsequently found to be 50% at fault in the accident, and that she was therefore entitled to recover $50,000. Standard Mutual issued a check to Pleasants in the amount of $45,000 representing the arbitration award of $50,000 minus the $5,000 it had already paid Pleasants under the medical payments coverage of the policy. Standard Mutual subtracted the $5,000 based on a provision in the uninsured motorist coverage portion of Pleasants's policy. Pleasants then filed a complaint to confirm the arbitration award and to obtain an order that Standard Mutual pay her $50,000 under the uninsured motorist coverage and the full $10,000 limit under the medical payments coverage. The trial court granted judgment for Pleasants in the amount of $60,000.

Standard Mutual appealed, arguing it had paid Pleasants the full amount she was entitled. This court reversed and rejected the argument Pleasants advanced in accordance with IC 34–4–33–12. In holding that Standard Mutual could obtain a credit for the payments it had made, we observed that:

"[IC 34–4–33–12] is inapplicable in this case. *It applies to claims by the insurer against some other party.* Clearly, the claim in question is the claim by Pleasants against the insurer, not a claim by the insurer against Pleasants. Standard Mutual makes no claim to recover amounts paid to Pleasants under the medical payments coverage."

*Id.* at 1330–31 (emphasis supplied).

As in *Couch*, Sell was making a claim against his *insurer*, which renders IC 34–4–33–12 inapplicable. Moreover, the plain language of the subrogation provision of the policy cited above states that any recovery from a third party must first be applied to indemnify Farm Bureau before those proceeds are used for any other purpose. *See Record* at 53. Sell's argument that Farm Bureau and the trial court were obliged to determine the extent of his fault in accordance with IC 34–4–33–12, is without merit.

In light of the above, the trial court correctly determined that Farm Bureau breached no contractual duty it owed to Sell, and Farm Bureau properly refused Sell's request for additional payment under the health insurance policy.

2.

■ Sell maintains that Farm Bureau is liable for punitive damages because Farm Bureau acted with malice and has refused to pay the requested benefits in bad faith. In support of his position, Sell cites from *Erie Ins. Co. v. Hickman* (1993), Ind., 622 N.E.2d 515:

"Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured.... Easily foreseeable is the harm that proximately results to an insured, who has a valid claim and is in need of insurance proceeds after a loss, if good faith is not exercised in

determining whether to honor that claim.... These factors, coupled with our return to the rule of no punitive damages in contract cases, leads us to conclude that *recognition of a cause of action for tortious breach of an insurer's duty to deal with its insured in good faith is appropriate.*

The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) *making an unfounded refusal to pay policy proceeds;* (2) *causing an unfounded delay in making payment;* (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into settlement of his claim."

*Id.* at 518–20 (emphasis supplied).

As we observed in issue 1, *supra,* the record reflects that Allstate paid the bills prior to the time in which Sell requested Farm Bureau to reimburse Allstate for those bills and then pursue its right of subrogation. Because the policy language was clear and unambiguous, Farm Bureau rightfully declined Sell's request and no breach of contract existed.

Even if Farm Bureau was ultimately found to have committed a breach, our supreme court has determined that an insurer may, in good faith, dispute an insured's claim without liability for punitive damages. *Erie, supra.* An insurer is only liable for punitive damages when there is clear and convincing evidence that it acted with malice, fraud, gross negligence or oppressiveness. Sell is unable to point to language in the Farm Bureau policy, or any legal authority, which would require the company to pay medical benefits payments which had already been paid by Allstate and subsequently pursue its subrogation rights in an attempt to recover those same benefits.

Because there is absolutely no evidence that Farm Bureau acted with malice or dealt with Sell in bad faith, we conclude that the trial court properly granted Farm Bureau's motion for summary judgment in denying Sell's claim for punitive damages.

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in result.