**ERIE INSURANCE COMPANY, Appellant–Defendant,**

v.

**James David GEORGE and his Attorney, Gerald J. Sufleta, Appellees–Plaintiffs.**

No. 49A02–9505–CV–249.

Court of Appeals of Indiana.

Dec. 11, 1995.

Robert A. Smith, William F. McManus, Smith & Wade, Indianapolis, for Appellant.

Gerald J. Sufleta, Indianapolis, for Appellees.

**OPINION**

FRIEDLANDER, Judge.

Erie Insurance Company appeals the decision of the trial court granting summary judgment in favor of its insured James David George and George's attorney Gerald J. Sufleta. Erie presents three issues for review, but we find only one to be dispositive:

Did the trial court err when it determined as a matter of law that Ind.Code 34–4–41–1, *et seq.* requires Erie to pay Sufleta a pro

rata share of attorney fees and costs from proceeds interpled in a subrogation action initiated by Erie?

We vacate and remand for further proceedings consistent with this opinion.

The facts are undisputed. On February 8, 1993, Donald Kellenberger was driving westbound on East Kessler Boulevard. As he approached Primrose Avenue, Kellenberger rear-ended a 1989 Honda Acura driven by George. George was injured and incurred medical expenses of $4,080.00. At the time of the collision, George was insured by Erie and Kellenberger was insured by GEICO Insurance Company. On May 8, 1993, George retained attorney Sufleta to represent him in his claim for personal injuries against Kellenberger. Three days later, Sufleta notified Erie of the representation and of his lien for attorney fees and costs. Erie informed Sufleta that the medical coverage portion of George's policy allowed Erie the right of subrogation and that Erie would pursue subrogation if it was requested to issue payment to George or on his behalf. On June 2, 1993, Sufleta submitted George's medical bills to Erie for payment. Soon after, Erie sent a $4,080.00 check to Sufleta in full payment of George's medical expenses and notified Sufleta of its intent to represent its own subrogation interest. In September, 1993, Erie notified GEICO of its right to subrogation under George's policy and requested that GEICO issue a separate check to Erie for its medical subrogation claim "when settlement has been reached with our insured and his attorney, Gerald Sufleta". *Record* at 167.

On November 2, 1993, Erie, in its own name as subrogee of George, filed an action against Kellenberger in the Washington Township Small Claims Court seeking reimbursement of the $4,080.00 it had paid George, as well as attorney fees and costs. Kellenberger's counsel filed an appearance and request for jury trial, and the action was removed to municipal court. After new pleadings were filed, George and Sufleta petitioned to intervene, alleging that Erie did not have a right to bring the subrogation action and that Sufleta was entitled to a pro rata share of attorney fees and costs. After

a hearing, the trial court granted the motion to intervene. In April, 1994, Kellenberger deposited $4,260.00 with the clerk of the court, seeking interpleader. The same day, the parties stipulated to Kellenberger's dismissal and the court issued an order in accordance with the stipulation. The parties then realigned, with George and Sufleta named as plaintiffs and Erie named as the defendant.

On February 8, 1995, in response to George and Sufleta's motion for summary judgment and Erie's cross-motion for summary judgment, the court ruled that Erie had "no independent right to file an action in its own name either pursuant to its contract of insurance or the common law" before George had settled with the tortfeasor or obtained a judgment against him. *Record* at 252. Additionally, the court rejected Erie's argument that previous court determinations that Sufleta was not entitled to attorney fees and costs collaterally estopped Sufleta from claiming the same. The court concluded its entry of judgment by stating:

> "The only real issue this Court finds is whether or not the amount of payment is $4,080.00 or $4,260.00 which has been interpled by the defendant Kellenberger's carrier. Since the total amount interpled is $4,260.00, the Court will assume that is the correct amount and will order plaintiff to submit an affidavit showing his attorney's fees, percentages thereof and all costs and expenses of his pursuit of his client George's claim and a status report as to that claim, whether settled, tried or pending, before this Court will further order any disbursements from the interpled amount." *Record* at 254.

Erie appeals the trial court's judgment. Oral argument was held on October 16, 1995 at Marian College in Indianapolis.

 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). When reviewing an entry of summary judgment, we stand in the shoes of the trial court and liberally construe all properly designated evidentiary matter in favor of the nonmoving party. *Rotec, Div. Of Orbitron, Inc. v. Murray Equip,*

*Inc.* (1993), Ind.App., 626 N.E.2d 533. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

 Since the facts are not in dispute, we must determine whether the trial court erred as a matter of law. The trial court concluded that, since the "whole purpose" behind subrogation is "to prevent double recovery by a plaintiff", an insurer has no right to subrogation until its insured has obtained recovery. *Record* at 250. An additional purpose of the subrogation rule, however, is to prevent a wrongdoer from shielding himself with the knowledge that a loss is covered by insurance. *Auto Owners Protective Exch. v. Edwards* (1922), 82 Ind.App. 558, 136 N.E. 577. The *Edwards* court noted that insurance contracts are not made for the benefit of wrongdoers and held that an insurer should not be forced to suffer the consequences of the wrongful act of another. "The general rule is that where the tortious conduct of a third party is the cause of a loss within the terms of a policy of insurance, then, *upon payment of the loss,* the insurer becomes subrogated by operation of law to whatever right the insured may have against the wrongdoer." *Id.,* 82 Ind.App. at 563, 136 N.E. at 579 (emphasis supplied). Erie was entitled to initiate a subrogation action once it tendered payment for George's medical expenses.

Having clarified the common law, the sole issue before us is whether Sufleta is entitled to a portion of the interpled proceeds for attorney fees and costs. Indiana's Cost Statute, IC 34–4–41–1 *et seq.,* requires that:

"4. An insurer claiming subrogation or reimbursement rights under this chapter shall pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting the third-party claim. These reasonable and necessary costs and expenses include, and are not limited, to the following:

(1) The cost of depositions.

(2) Witness fees.

(3) Attorneys fees to the lesser of the amount contracted by the insured for the insured's portion of the claim or thirty-three and one-third percent (33⅓%) of the amount of the settlement."

Erie argues that this case does not fall within the scope of IC 34–4–41–1, *et seq.* IC 34–4–41–3 states:

"This chapter applies to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement of judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer."

Erie contends that the statute applies only to those situations where an insurer claims subrogation rights to the proceeds recovered by an insured and that in the present case, the funds were recovered by Erie, the insurer. "By its very language, the chapter does not apply to an insurer claiming subrogation or reimbursement rights prior to an insured recovering proceeds through a legal proceeding." Appellant's Brief at 21–22.

 When construing a statute, we determine and give effect to the true intent of the legislature. *Cook v. Humana Health Care Plan, Inc.* (1994), Ind.App., 636 N.E.2d 166. We will not interpret a statute which is clear and unambiguous on its face. *Id.*

In *Cook,* we determined that the purpose of the Cost Statute is to protect "against the unjust enrichment of an insurance company benefited by the efforts of its insured's counsel." *Id.* at 168. In that case, the insured, Cook, sustained injuries during her employment. Cook filed a worker's compensation claim which the carrier denied, stating that Cook's injuries were not work-related. Cook eventually received benefits from Humana, her own group health plan insurer, and retained attorney Fox to appeal the denial of her worker's compensation claim. Fox's efforts resulted in the settlement of the claim. Humana demanded reimbursement from the settlement of the payments it had previously made to Cook for medical expenses and refused to pay Fox attorney fees. We held that Humana was responsible for its pro rata share of costs and attorney fees, since "[t]o hold otherwise would unjustly enrich Huma-

na by the fruit of Fox's labor." *Id.* at 169. In *Cook,* the insurer contributed no effort to obtain the final settlement and sought to "ride on the insured's coat tails ... without paying for the ride." *Dale and Brandy D'Archangel v. Allstate Ins. Co.,* (1995), Ind. App., 656 N.E.2d 294, 297 (quoting Appleman, *Insurance Law & Practice* § 5141 at 285 (1981)).

A different factual pattern was presented to this Court in *Indiana Union Mut. Ins. Group v. Smith* (1995), Ind.App., 656 N.E.2d 538. In *Smith,* Colbert, who was insured by Indiana Union Mutual Insurance Company, was involved in a collision with Pinkstaff, who was insured by State Farm Mutual Automobile Insurance. Colbert sought relief from State Farm, but the insurer refused her claim on the basis that Pinkstaff had failed to pay a policy premium. Colbert filed a claim with Indiana Union under her uninsured motorist coverage, and reached settlement with the company. After paying Colbert, Indiana Union pursued its subrogation rights against State Farm. Changing its earlier position, State Farm agreed to reimburse Indiana Union for the payments it had made to Colbert, which amounted to $20,887.88. Before issuing the funds, State Farm submitted a release which required Colbert's signature. Colbert refused to sign the release and retained attorney Smith to manage her claims against State Farm. Smith did not file suit, but initiated negotiations with State Farm. Smith negotiated a settlement for $45,000 and notified Indiana Union that Colbert would honor its subrogation rights for $20,-887.88 and that he planned to deduct attorney fees and costs from the subrogation proceeds. Indiana Union protested. We held that Indiana Union was not required to pay attorney fees and costs to Smith, inasmuch as the insurance company did not benefit from Smith's labor. Indiana Union exerted its own efforts, and incurred its own expenses, when it secured the first settlement.

To require the insurer to deduct Smith's costs and fees would be to force the company to pay twice for settlement expenses. Just as the Cost Statute prevents an insurer from benefiting from the work of its insured's attorney, it should not be implemented to reward an attorney who has not contributed to a result obtained by the insurer.

■ In order for a determination to be made concerning whether Erie would be unjustly enriched if it were not required to pay attorney fees and costs, a factual determination of Sufleta's participation in securing the interpled funds is necessary. The record before us is unclear as to the extent of Sufleta's efforts to secure judgment against Kellenberger or negotiate a settlement with GEICO. We therefore vacate the trial court's entry of summary judgment and remand with instructions that the court hear evidence as to the action taken by Sufleta in pursuing George's claim and the attendant expenses and attorney fees and enter judgment consistent with this opinion.[1]

Vacated and remanded for further proceedings consistent with this opinion.

KIRSCH and BAKER, JJ., concur.

---

1. Erie also raises the issue of collateral estoppel, citing the decisions of two trial courts which ruled that Sufleta was not entitled to attorney fees. We do not address this argument, inasmuch as we have determined that the relevant inquiry is whether Erie was unjustly enriched in this particular case. Although Sufleta had a full and fair opportunity to litigate the issue of attorney fees in the other actions, *see Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134, each case turns on its own facts, rendering collateral estoppel inapplicable. The fact that collateral estoppel is ill-suited to resolve this issue is illustrated by the fact that Sufleta cites two additional decisions wherein the trial court awarded attorney fees.