**ERIE INSURANCE CO., Appellant (Defendant below),**

v.

**James David GEORGE and his attorney, Gerald J. Sufleta, Appellees (Plaintiffs below).**

No. 49S02–9610–CV–636.

Supreme Court of Indiana.

May 30, 1997.

Robert A. Smith, William F. McManus, Indianapolis, for Appellant.

Gerald J. Sufleta, Indianapolis, for Appellees.

Robert L. Hartley Jr., Scott S. Morrisson, Indianapolis, for Amicus Curiae Insurance Institute of Indiana, Inc.

Daniel L. Robinson, George Clyde Gray, Indianapolis, for Amicus Curiae Indiana Trial Lawyers Association.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case deals with the ability of an insurer who has reimbursed part, but not all, of the insured's claim for personal injuries against a third party to institute its own action, apart from its insured's, to recover its subrogated amount. It also deals with the effect of Indiana Code § 34-4-41, which provides for subrogated insurers to bear a portion of the legal expense of collecting their and their insured's claim. We hold that an insurer may not sue independently to enforce a personal injury claim arising out of subrogation prior to resolution of its insured's claims absent an agreement with its insured granting explicit and unequivocal authority to initiate a lawsuit or settlement that governs the forum for resolution of both the insured's and insurer's claims.

### Factual and Procedural History

The facts here are undisputed. On February 8, 1993, Donald Kellenberger rear-ended

James David George in an auto accident in Indianapolis. George and Kellenberger were insured by Erie Insurance Company and GEICO General Insurance Company respectively. On May 8, 1993, George retained attorney Gerald J. Sufleta to represent him in his claim for personal injuries against Kellenberger. Sufleta notified Erie on May 11, 1993 of his representation and asserted an attorney's lien for fees and costs.[1] In June 1993, in response to a claim under the medical benefits provision of George's policy, Erie sent Sufleta a check for $4080 as payment for George's medical expenses. Erie's cover letter noted that by paying these expenses it acquired a claim against Kellenberger in that amount by subrogation and conveyed its intent to assert its own subrogated interest. It is undisputed that Erie had a right of subrogation as a result of its payment pursuant to its policy insuring George. On September 24, 1993, Erie informed GEICO by letter of its right of subrogation and requested that GEICO issue Erie a separate check as reimbursement for the medical expenses "[w]hen settlement has been reached with our insured and his attorney." Even though George had not yet settled his claim, a week later Erie wrote GEICO to demand payment within ten days. Payment was not received and Erie as subrogee, without notice to Sufleta or George, initiated its own lawsuit against Kellenberger.

On February 15, 1994, George and Sufleta moved to intervene in Erie's lawsuit, alleging that Erie had no right to bring an action in its own name at this stage. They also alleged that in any event Erie was liable for a pro rata share of George's attorney's fees and costs under Indiana Code § 34-4-41-4, discussed below. At a hearing on April 21, 1994, three things happened: (1) the trial court granted the motion to intervene; (2) Kellenberger, via GEICO, filed a "complaint seeking interpleader" of Erie and Sufleta and deposited a check for $4260[2] with the court; and (3) Erie, George, and Sufleta stipulated to a dismissal of Kellenberger from the lawsuit with prejudice. George and Sufleta moved for summary judgment, contending that Erie could not bring its subrogation claim against Kellenberger directly, but rather had to pursue the claim against any settlement George received from Kellenberger. George and Sufleta also asked for attorney's fees and costs from the interpleaded funds. Erie also moved for summary judgment, arguing that as subrogee it had the right under both common law and Indiana Trial Rule 19(E)(3) to bring an action against Kellenberger in its own name once payment had been made to George. On the fee issue, Erie claimed that Sufleta was entitled to nothing because (1) he expended no effort to recover the money from Kellenberger; (2) the statute did not apply to the facts of this case; and (3) Sufleta was collaterally estopped from litigating the issue by decisions in prior lawsuits involving Sufleta's right to attorney's fees.

The trial court ruled that Erie could not sue in its own name to enforce its subrogation rights until George settled with Kellenberger or obtained a judgment against him. In the absence of a common-law right to sue independently before George had reached a settlement or judgment Erie could do so only if its policy with George so provided. The court interpreted the policy as providing that Erie could enforce its subrogation rights only after a settlement or judgment. In the interim, any damages George recovered to which Erie was entitled were to be held in trust by George until the claim was settled or finally adjudicated. The court ordered Sufleta to submit an affidavit substantiating the costs incurred in pursuing George's claim and reporting whether the claim was settled or pending. Disbursement of the interpleaded funds was delayed pending resolution of the fee issue.

Erie appealed and the Court of Appeals reversed, holding that Erie was entitled to initiate its own action against Kellenberger

---

1. Sufleta's letter did not specify what assets or payments he claimed to be subject to the lien he asserted. We express no opinion as to whether, or on what, Sufleta held a lien.

2. In February 1994, George submitted a claim to Erie for an additional $180 in medical expenses, which Erie paid. The interpleaded check for $4260 therefore appears to reflect the total amount Erie had reimbursed George for medical bills under the insurance policy.

after payment of George's medical expenses and that a factual determination of Sufleta's contribution to securing the interpleaded funds was required before attorney's fees and costs could be awarded to Sufleta. *Erie Ins. Co. v. George*, 658 N.E.2d 950 (Ind.Ct. App.1995). Sufleta and George sought transfer, which was granted on October 7, 1996. Ind. Appellate Rule 11(B)(3).

**Standard of Review and Issues Presented**

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). Our standard of review is well established. Although Erie has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that Erie was not improperly denied its day in court. *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 280–81 (Ind.1994). On summary judgment, all facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind. 1993).

Specifically, this appeal raises two questions:

I. Does Erie as subrogee have the right to bring an independent action for medical expenses paid to George? [3]

II. Who is entitled to the interpleaded funds?

As explained below, we hold that Erie cannot file a lawsuit for medical expenses in its own name independent of George's claim. We also hold the Court of Appeals correctly ruled that summary judgment on the fee issue is inappropriate at this time because a factual determination remains as to Sufleta's role, if any, in obtaining the recovery from Kellenberger, and the application of Sufleta's fee arrangement with George to those facts.

**I. The Substantive Law of Subrogation**

A. *Subrogation at common law.*

■■■■ Subrogation is a doctrine of equity long recognized in Indiana. It applies whenever a party, not acting as a volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable. *See, e.g., Loving v. Ponderosa Sys., Inc.*, 479 N.E.2d 531, 536–37 (Ind.1985). When a claim based on subrogation is recognized, "a court substitutes another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the right of the creditor in relation to the debt." *Matter of Estate of Devine*, 628 N.E.2d 1227, 1230 n. 4 (Ind.Ct.App.1994). It is settled that "[s]ubrogation confers no greater right than the subrogor had at the time the surety or indemnitor became subrogated. The subrogator [sic] insurer stands in the same position as the subrogor, for one cannot acquire by subrogation what another, whose rights he claims, did not have." *American States Ins. Co. v. Williams*, 151 Ind.App. 99, 106, 278 N.E.2d 295, 300 (1972) (internal quotation marks and citation omitted). The ultimate purpose of the doctrine, as with other equitable principles such as contribution, is to prevent unjust enrichment. 73 AM.JUR. 2D *Subrogation* § 4 (1974). This string of established common-law maxims adds up to: (1) Erie, having paid George for medical bills allegedly caused by Kellenberger's negligence, has acquired an interest in George's claim against Kellenberger to that extent; but (2) Erie gets no more than George had before the payment.

B. *The insurer subrogation statute.*

Although subrogation is a creature of equity originally formulated and applied by courts, the Indiana Legislature in 1992 enacted a statute addressing subrogation and attorney's fees in personal injury actions. IND. CODE §§ 34–4–41–1 to 34–4–41–5 (1993). This case presents the first occasion for this Court to interpret this statute. The Court of Appeals has construed the statute in several

---

**3.** Even though Kellenberger has been dismissed from this lawsuit, the issue whether Erie can sue him directly before George settles or obtains a judgment nonetheless controls the short-term fate of the $4260. If Erie has no claim prior to resolution of George's claim, the funds should be disbursed to George subject to Erie's rights. If Erie can assert its claim as it did, it is entitled to pursue its claims to the interpleaded funds.

decisions, but none involved an insurer's attempt to sue a tortfeasor in its own name to enforce subrogation rights for personal injury damages prior to some final resolution by the insured.[4] By its plain terms, the statute "applies to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer." § 3. It obligates an insurer claiming subrogation or reimbursement rights to "pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim." § 4. One of the first decisions interpreting the statute, *Cook v. Humana Health Care Plan, Inc.*, 636 N.E.2d 166 (Ind.Ct.App.1994), concluded that its main purpose was to prevent free riding by insurers who assert subrogation or reimbursement rights against a recovery obtained through the efforts of the insured.

Application of the statute requires: (1) an insurer claiming subrogation or reimbursement rights based on its payment for personal injuries to its insured; (2) proceeds from a settlement or judgment; and (3) a legal proceeding[5] initiated by the insured against the "responsible" party (i.e., the tortfeasor or its insurer, *see Cook*, 636 N.E.2d at 168) that led to the recovery. The statute is silent as to the procedures available to the subrogee insurer to collect its subrogated claim. Nor

does it address procedures by which the insured is to obtain the pro rata share of the attorney's fees and costs the statute obligates the insurer to pay. At best, by referring to "pro rata" payments "out of the amount received from the insured" the statute suggests an assumption that the insured has already collected from the tortfeasor and remitted subrogation payments to the insurer before the sharing of attorney's fees and costs occurs. This in turn suggests that no independent prior action by the insurer is contemplated, but the statute does not directly address whether a subrogated insurer can file an independent suit for subrogated personal injury claims before its insured's claims are resolved. The statute does state that it "does not prohibit an insurer with a subrogated property damage claim from settling its subrogation claim separately by arbitration, agreement, or suit in its own name." IND.CODE § 34-4-41-5 (1993). We express no opinion as to whether this provision amounts to an implicit authorization of a prior separate *property damage* suit by a subrogee that would override the considerations outlined in this opinion as to personal injury claims. The effect of this provision on disposition of this case is discussed in Part II.F *infra.*

## II. Procedures Available to the Subrogee Insurer

We find no directly relevant Indiana cases[6] and decisions from other jurisdictions

---

4. Nearly every case involved efforts by the insured or its counsel to obtain recovery on behalf of the insurer, rather than the insurer's attempting to act on its own behalf. *See Allstate Ins. Co. v. Smith*, 656 N.E.2d 1156 (Ind.Ct.App.1995) (insured settled with tortfeasor without filing suit; fees awarded to insured under statute); *D'Archangel v. Allstate Ins. Co.*, 656 N.E.2d 294 (Ind. Ct.App.1995), *trans. denied* (insured's counsel settled with tortfeasor without filing suit; fees awarded to counsel under statute); *Cook v. Humana Health Care Plan, Inc.*, 636 N.E.2d 166 (Ind.Ct.App.1994) (same); *Robinson v. Zeedyk*, 625 N.E.2d 1249 (Ind.Ct.App.1993), *reh'g denied*, *trans. denied* (settlement reached after suit was filed; fees awarded to insured's counsel).

5. *D'Archangel* interpreted "legal proceeding" to include not only judgments or settlements recovered through litigation, but also any settlement obtained through negotiations or alternative dispute resolution. 656 N.E.2d at 296. *Accord Allstate Ins. Co.*, 656 N.E.2d at 1159 (settlement without litigation was "legal proceeding" under statute).

6. *Public Service Co. of Indiana v. Dalbey*, 119 Ind.App. 405, 85 N.E.2d 368 (1949) held that a homeowner whose property damage from an explosion next to his home had been reimbursed by his own insurer could sue for personal injuries from the explosion despite the insurer's separate pending suit as subrogee for the property damage loss. The case recognized that the then "majority" rule would prohibit two suits, but found that property damage and personal injury claims should be regarded as separate causes of action, in part because different limitations periods applied. *Id.* at 417, 85 N.E.2d at 373. In so holding, *Public Service Co.* did not note our apparently inconsistent decision in *Roby v. Eggers*, discussed *infra*. In any event, George's accident

offer little guidance on the question of the subrogee's ability to sue for subrogated medical payments as Erie did here. Nor are we directed to any relevant Indiana statute on point. However, several general principles are relevant. First, Indiana has long discouraged claim splitting. Second, independent action by a subrogee to enforce subrogation rights, whether by negotiation or litigation, has been upheld when the subrogee insurer secured a release or assignment from its subrogor insured permitting it to act on its own. For the reasons explained below, we hold that the insurer cannot sue independently to enforce subrogation rights for personal injuries while its insured's claims are still outstanding unless the insurer has obtained an explicit contractual right transferring control of the dispute to the insurer.

### A. *Absence of direct precedent.*

Erie points to several Indiana cases to support the right to file an independent lawsuit against a tortfeasor under these circumstances. Upon close analysis none is controlling. Both parties and amici contend we must deal with *Imel v. Travelers Indem. Co.,* 152 Ind.App. 75, 281 N.E.2d 919 (1972). There the insured sued his own insurer to recover $2000 in medical and hospital bills resulting from an auto accident. Although the facts are not discussed at length, the dispute apparently arose when Imel refused to sign documents recognizing his insurer's ability under the policy to claim subrogation rights. The insurance policy contained a subrogation clause that Imel contended was unlawful and unenforceable. The court rejected Imel's argument that subrogation, as a

general matter, violated the rules against: (1) assignment of personal-injury claims; and (2) splitting causes of action. On the latter point, the court held that "subrogation does not constitute a splitting of a cause of action in that a dual ownership of a single cause exists[.]" *Id.* at 80, 281 N.E.2d at 922 (citation omitted). *Imel* set forth the unremarkable proposition that insurance companies have the right to include subrogation agreements in their insurance policies and that these clauses are generally enforceable. *Accord Mutual Hosp. Ins., Inc. v. MacGregor,* 174 Ind.App. 550, 555, 368 N.E.2d 1376, 1379 (1977). However, *Imel* does not address when and under what circumstances a right of subrogation for personal injury damages may be enforced by litigation or other action by an insurer.

The Court of Appeals held that Erie could sue Kellenberger independently under the authority of *Auto Owners' Protective Exch. of Kankakee, Ill. v. Edwards,* 82 Ind.App. 558, 136 N.E. 577 (1922). In oft-quoted language, that case stated that "where the tortious conduct of a third party is the cause of a loss within the terms of a policy of insurance, then, upon payment of the loss, the insurer becomes subrogated by operation of law to whatever right the insured may have against the wrongdoer." *Id.* at 563, 136 N.E. at 579. That is correct, but does not address the next point, which is that the insured did not have the right to split the claim before the insurer acquired its subrogation rights. In addition, *Auto Owners'* did not deal with an effort to assert subrogation claims independent of and before resolution of the insured's remaining claim.[7]

produced two damage elements from a personal injury and is distinguishable on that ground. More importantly, *Public Service Co.* did not need to reach the issue of separate causes of action because even if they are the same, the personal injury claim on appeal was the first to judgment. Any claim splitting defense would be available in the pending case by the subrogee. Finally, the insurer in that case obtained an explicit assignment of the right "to sue, compromise or settle" in the insured's name and a warranty that the insured had not settled. *Id.* at 416, 85 N.E.2d at 373. *Compare* note 10 *infra. Public Service Co.* is inconsistent in principle with *Nichols v. Yater,* 147 Ind.App. 29, 258 N.E.2d 66 (1970), where the Appellate Court

subsequently held that *res judicata* principles would apply to companion suits for property and personal injury damages arising out of the same tort to bar relitigation of issues determined in the first lawsuit between the same parties.

**7.** It is not clear exactly what *Auto Owners'* holds. In the first part of the opinion, the court seemed to hold that reversal and a new trial were required because of the failure to join an indispensable party. The comments that followed about subrogation could be dismissed as dicta; the court prefaced the discussion by stating: "[S]ince there must be a reformation of the issues, there is another question presented by the

Similarly, two other cases cited by Erie, *American Auto. Fire Ins. Co. v. Speiker*, 97 Ind.App. 533, 187 N.E. 355 (1933) and *Hagerman v. Mut. Hosp. Ins., Inc.*, 175 Ind.App. 293, 371 N.E.2d 394 (1978), did not involve independent lawsuits against tortfeasors by a subrogee insurer. Rather, both concerned the circumstances under which an insurer can claim a right of reimbursement from its insured after payment had been made to the insured by the tortfeasor's insurer. In short, with the exception of one case discussed in subsection E *infra*, rather than directing us to any cases defining the circumstances under which the insurer may act, Erie relies on decisions stating in isolation that an insurer has some right to subrogation upon payment to its insured.[8] Like the Indiana cases, the decisions from other jurisdictions cited by the parties and amici involved a variety of fact patterns and a range of results.[9] *See generally* Andrea G. Nagel, Annotation, *Simultaneous Injury to Person and Property as Giving Rise to Single Cause of Action—Modern Cases*, 24 A.L.R.4th 646 (1983). Most of these concerned the insurer's rights after a settlement or judgment by the insured. The procedural steps available to enforce the subrogee's right remain largely unaddressed.

## B. Claim splitting.

 It is axiomatic that Erie, upon paying George's medical bills, acquired no greater rights than those George held himself.[10] Because George's claim against Kellenberger was still outstanding when Erie filed suit, Erie, by suing only for the medical expenses, effectively split George's claim. In so doing, Erie has attempted something George himself could not have done. And because Erie's legal rights are coterminous with George's, Erie's lawsuit is barred as an impermissible attempt to split the personal injury claim.[11]

This is not a novel doctrine. Our decisions have consistently barred claim splitting. *See, e.g., Roby v. Eggers*, 130 Ind. 415, 422, 29 N.E. 365, 368 (1891) ("An entire claim arising from a single tort can not be divided and made the subject of several suits, however numerous the items of damages may be"). More recently, in summarizing our law on this issue, the Seventh Circuit noted Indiana's well established policy against claim splitting: "Indiana, like most other

record which probably will arise again." 82 Ind.App. at 563, 136 N.E. at 579.

8. Amicus curiae Insurance Institute of Indiana asserts that *Scott v. Prudential Property and Cas. Ins.*, 561 N.E.2d 812 (Ind.Ct.App.1990) supports the ability of insurers to sue independently to enforce subrogation rights. That case involved a subrogee insurer's suing the tortfeasor directly to recoup payments made to its insured, but the status of the insured's claim—whether pending or settled—was not discussed.

9. The principal case to which we have been directed that may suggest a contrary result is *Smith v. Travelers Ins. Co.*, 50 Ohio St.2d 43, 362 N.E.2d 264 (1977). In that case, the insureds executed a subrogation agreement with their insurer promising not to prejudice the company's right of subrogation. The insureds then settled with and released the tortfeasor, and made a claim for medical payments under their insurance policy. The insurer refused to pay on the ground that its subrogation rights had been prejudiced. Thus, the question in the case was the effect of the assignment and release on the insureds' right to recover medical payments under their own insurance policy. The Ohio Supreme Court framed the issue as whether an insurer could prosecute a medical payments claim in a separate action against a tortfeasor and held in the affirmative. Because no independent suit by the insurer in that case had been filed, it is unclear why *Smith* analyzed the question in this way. In any event, *Smith* differs from the case before us today in that here no settlement or final resolution by George had been achieved at the time Erie filed suit. To the extent *Smith* is inconsistent with our result, we do not find its reasoning persuasive.

10. There is one estoppel-like exception to the rule that insurers take their insureds' rights as they find them. Insurers can protect their subrogation rights by providing notice to the tortfeasor or its insurer, after payment to the insured, of a right to subrogation or reimbursement. Where a debtor has notice of such a right, the subrogee's interest cannot be defeated by a release negotiated with the subrogor alone. *Pittsburgh, C., C. & St. L. Ry. Co. v. Home Ins. Co. of New York*, 183 Ind. 355, 370, 108 N.E. 525, 531 (1915) (discussed *infra* ); *Hockelberg v. Farm Bureau Ins. Co.*, 407 N.E.2d 1160, 1161 (Ind.Ct.App.1980).

11. As noted above, we do not decide whether a subrogated claim for property damage can be asserted prior to resolution of the insured's personal injury claim from the same event.

states, does not allow a party to split a single claim for relief. Multiple legal theories supporting relief on account of one transaction must be litigated at one go." *Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 455 (7th Cir.1990).

One obvious objective behind the rule is deterring repetitive litigation. Public resources are wasted if more than one judge and more than one jury are employed to try claims for different damage elements arising out of the same event and asserted under the same theory of recovery. The defendant also has an interest in not being subject to multiple litigation. The rule against claim splitting applies with no less force to claims arising under equitable doctrines, in this case subrogation: "A party seeking to enforce a claim, *legal or equitable*, must present to the court ... all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it piecemeal[.]" *F.L. Mendez & Co. v. General Motors Corp.*, 161 F.2d 695, 698 (7th Cir.1947) (emphasis added).

Our cases dealing specifically with subrogation rights reflect this hostility to claim splitting. The only case from this Court to which we have been directed where a subrogee insurer sued the wrongdoer directly is *Pittsburgh, C., C. & St. L. Ry. Co. v. Home Ins. Co. of New York*, 183 Ind. 355, 108 N.E. 525 (1915). There the insurer sued a railroad to recover subrogated property damages paid to its insured after sparks from the railroad set fire to the insured's building. The total loss was greater than the policy limits and the insurer paid its limits and sued the railroad, which in turn impleaded the insured pursuant to a statute requiring all interested parties to an action to be joined. This Court rejected the railroad's argument that the insurer was not a proper plaintiff. We reasoned that (1) the insurer, by subrogation, had equitable title to the claim against the railroad; (2) Indiana had rejected the view of some states at that time that the suit must be brought in the name of the insured; (3) the insured and insurer were proper co-plaintiffs; and (4) the failure of the insured to join as co-plaintiff was not reversible error because the railroad had previous-ly settled with the insured for the excess. *Pittsburgh Railway Co.* does not stand for the proposition that the insurer can initiate a separate claim while the insured's dispute remains unresolved. To the contrary, the decision explicitly acknowledged the "rule against splitting a cause of action and subjecting a defendant to more than one action on the same cause," but found on the facts that no such split had occurred. *Id.* at 368, 108 N.E. at 530.

### C. *Explicit agreement.*

■ Erie points out that insurers cannot always depend on the insured to enforce their equitable interest in any recovery. There may be circumstances in which the insured collects under the insurance policy but pursues no action against the tortfeasor. And because the subrogee steps into the legal position of the subrogor, insurers may be faced with forfeiture of recovery due to statutes of limitations. The solution to the problem is not suing independently without notice to the insured, as Erie did here, but rather securing an assignment of rights from the insured by contract to initiate a unitary lawsuit. Indeed, where an insurer has paid an insured's entire loss under an insurance policy and been assigned the right to pursue any and all causes of action, the insured can no longer sue in its own name. Conversely, the insurer can sue to enforce subrogation rights in that situation. *John A. Boyd Motor Co. v. Claffey*, 94 Ind.App. 492, 165 N.E. 255 (1932) (construing statute requiring lawsuit to be brought by "real party in interest").

*Harrison v. State Farm Mut. Auto. Ins. Co.*, 164 Ind.App. 569, 330 N.E.2d 126 (1975), cited by Erie, is consistent with this view. There the plaintiffs were injured in an automobile accident and received medical payments under their own insurance policy from State Farm. In accordance with the policy, the plaintiffs executed a "medical trust agreement" subrogating to State Farm a right of reimbursement. The plaintiffs then hired their own counsel to prosecute the claim. Before counsel filed suit, the tortfeasor's insurer, bypassing counsel, sent State Farm a check for $1000 as reimbursement for the payments. The plaintiffs' counsel

demanded that State Farm turn over the $1000 to plaintiffs. State Farm refused and counsel filed suit. The Court of Appeals held that State Farm's action in independently obtaining the $1000 by agreement was permissible under the "medical trust agreement." We agree that the tortfeasor (the counterpart of Kellenberger in this case) may agree with the subrogee insurer (Erie's counterpart) to remit the amount of medical payments.[12] However, *Harrison* does not hold that if no agreement could be reached, the subrogee could have sued before resolution of the insured's claim.

■■ An insured may transfer to its insurer the right to initiate a unitary lawsuit to assert both of their claims. And the two can join together as co-plaintiffs where each has an interest in the claim. T.R. 20. But the insurer and insured cannot contract out of the established rule against claim splitting. The Appellate Court in *John A. Boyd* noted that an equitable assignment of the right to sue may arise by operation of law, rather than by contract, upon full payment of the loss. 94 Ind.App. at 498, 165 N.E. at 257. However, where the insured has remaining claims, only an explicit contractual relinquishment of the right to select the forum and control the litigation is sufficient to deprive the insured of those rights. We are not directed to any policy provision or to any document incident to the payment of medical benefits that would alert George to the prospect that Erie was acquiring control over George's claim.[13] To the contrary, initial communications with George and GEICO implied Erie would wait for what Erie terms "inactive" resolution of its claim, i.e., collection as a consequence of George's recovery. Although Erie could have bargained for the right to initiate George's claim, it did not do so. Erie contends that it acquired a right to sue independently upon payment to George by virtue of its insurance policy with him. Where a right to subrogation is asserted under a contract before the debt is satisfied, as here, "the contract must be clear, unequivocal and so certain as to admit no doubt on the question." *Capps v. Klebs*, 178 Ind.App. 293, 297, 382 N.E.2d 947, 950 (1978). Read most favorably to Erie, the clause is at best ambiguous on whether Erie has any right upon payment to sue independently before George's claim is resolved.[14] The clause certainly does not alert the lay reader that the consequence of independent action, as explained in subsection D *infra*, is to deprive the insured of choice of forum. It is well settled that "[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer." *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996), *reh'g denied*. To accord a right to sue to enforce all claims, a subrogation clause must be far more explicit than Erie's was here.

### D. *The Trial Rules.*

■ The Indiana Rules of Trial Procedure were enacted in 1970 and replaced the statutes governing joinder of parties and the older cases discussed above. Trial Rule 19(E)(3) has provided since that time that a "subrogee may enforce the claim to the extent that he establishes his title or interest by appropriate pleading and proof without joining the subrogor." We find no reported appellate decisions interpreting this section of Rule 19. Rule 19(E)(3) does recognize a generic right in a subrogee to sue without naming the subrogor. This does not, however, address the issue of when a subrogee acquires a claim that may be asserted independent of the subrogor's. Rather, it deals with the pre-existing rule of joinder, and assumes the subrogee has an assertable claim as a matter of substantive law. The interpretation of Rule 19(E)(3) that Erie

---

**12.** *Harrison* predates the statute on which Sufleta relies, so the issue of the insured's attorney's fees was resolved by resort to common law principles.

**13.** As noted in subsection F *infra*, it may become the task of the Insurance Commissioner to resolve in the first instance what provision dealing with this problem may be allowable in future policies.

**14.** In outlining Erie's rights, the policy provided: "After we make a payment under this policy, we will have the right to recover from anyone else held responsible. Anyone we protect is required to transfer this right to us, and do nothing to harm this right. Anyone receiving payment from us and from someone else for the same accident or loss will reimburse us up to our payment."

urges us to adopt today would effectively sanction claim splitting in personal injury cases, in clear conflict with Indiana case law.

In addition, allowing independent lawsuits by subrogees under Rule 19(E)(3) before resolution of the insured's claim would divest the insured of the ability to control the presentation of the insured's claims. If the insurer were permitted to assert its subrogated claim pursuant to Rule 19(E) independently of the insured's, then clearly the provisions of Section (E)(3)(c) apply and the insured is "subject to permissive joinder as provided in Rule 20." Rule 20(A)(2), in turn, provides that the insured, as an "unwilling plaintiff," may be dragged into that suit by the defendant. Here Kellenberger quite reasonably chose to write a check for the $4260 in medical payments and walk away from this free for all among Erie, its insured and its insured's attorney. If Rule 19(E) were available to Erie, however, Kellenberger could equally rationally have determined that Erie had selected a favorable forum to litigate the dispute between George and Kellenberger. In that event, Rule 20 would enable involuntary joinder of George's claims. The net effect of this would be to permit Erie, by paying medical benefits, to obtain control of the prosecution of George's claim. As noted above, that risk is nowhere spelled out in the insurance policy on which Erie relies for its subrogation rights. Again, we express no opinion as to whether this result could be achieved by a separate and antecedent suit for subrogated property damages.

### E. *Duplicative lawsuits could produce undesirable collateral consequences.*

Erie cites *Chemco Transp., Inc. v. Conn,* 527 N.E.2d 179 (Ind.1988) for the proposition that the insurer's separate action as subrogee will not bar the insured's claims. In that case, a Chemco truck injured Conn and destroyed his vehicle. First Conn filed a claim for his vehicle with his own insurer. Conn next sued Chemco in Cass County for both property damage and personal injuries. Next, in settlement of an arbitration, he collected from his insurer, Protective Insurance Company, for the damage to his vehicle. Ten months later, while Conn's suit was still pending, Protective, as subrogee, instituted a lawsuit in Marion County against Chemco for the property damage, naming Conn as a plaintiff without his knowledge. This second lawsuit was settled and dismissed with prejudice. Chemco then filed a motion for partial summary judgment in Conn's Cass County suit, claiming the Marion County suit was *res judicata* as to the claims for property damage. The motion was denied and a jury awarded Conn damages for both the vehicle and personal injuries.

The Court of Appeals held *res judicata* did apply, and this Court granted transfer and affirmed the trial court, holding that Conn was not a party to the Marion County suit and was therefore not bound by it. Apparently no mention of Trial Rule 19(E) was made in any court. Under that rule if the Marion County suit was properly instituted, Conn was not a necessary party to it. Equally absent is any discussion of the point raised by George and Sufleta here—a challenge to the subrogee's ability to bring a separate claim in Marion County. Because the Marion County action was settled, no appeal ensued and the issue was never raised in the appellate courts. However, in review of the Cass County action, this Court did state that "[a]lthough it is true that Protective had the right to pursue its subrogation claim in Conn's name, Conn reserved the right to pursue his claim since Protective only partially compensated him for the loss." *Id.* at 182. This Court found "merit to Conn's contention that to find against him on the *res judicata* issue here would be to give insurance companies the power to settle all claims of a plaintiff in spite of the fact that plaintiff has not given all his rights to his insurer when settling with his own insurer." *Id.*

Today's case presents what *Chemco* lacked: a direct challenge to the first lawsuit rather than an effort to deal with its *res judicata* effects in the second. The result in *Chemco* appears to be that Chemco paid twice, once to Conn's insurer, then again to

Conn for the same vehicle.[15] Equally unsatisfactory is the result *Chemco* sought to avoid by finding no *res judicata* effect—control of the insured's case by its insurer. Requiring the subrogee to join in the insured's suit by reliance on the ancient prohibition against claim splitting solves both problems and also eliminates duplicative litigation. Indeed, George contends this case presents a situation where George was in the process of settling his personal injury claims in a manner that would produce reimbursement to Erie without any litigation at all. Whether that is true in this case or not, certainly such a scenario is likely to occur from time to time if insurers can initiate independent claims as Erie did here. Even if *Chemco* was correct in its observation as to property damage—a question we do not decide—we decline to permit bifurcated personal injury claims.

### F. *The effect of the insurer subrogation statute.*

■ Section 5 of the insurer subrogation statute, Indiana Code § 34–4–41–5, provides that the statute "does not prohibit" a subrogee from recovering property damage loss. Sufleta and his supporting amicus urge us to conclude that this provision constitutes an implied prohibition against the subrogee's proceeding separately to recover medical benefits. We do not agree that the statute prohibits the subrogee under all circumstances. The statute provides no time limitation on the insured's decision to proceed. As a result, to hold that it prevents the subrogee from proceeding unilaterally even with the insured's consent would deprive the subrogee of any recovery at all if the insured declines to proceed for any reason. There are several situations where this is a realistic possibility. The simplest example is where the medical expenses are greater than the tortfeasor's financial capability. In that case the insured has no incentive to recover from the tortfeasor because any recovery would be required to be remitted to the subrogee. The possible fee incentive of the insured's attorney, if one

has been hired, is no substitute for the need for the client to direct the lawsuit.

We conclude the Legislature left this matter to the courts and perhaps the Insurance Commissioner to resolve equitably. Assuming that insurers seek to include explicit provisions dealing with this problem in future policies, it may be up to the Commissioner in the first instance to determine whether those provisions are consistent with the insurance laws. *See, e.g.,* IND.CODE § 27–4–1 (1993 & Supp.1996). Forfeiture of the subrogee's right to recover medical expenses is too drastic a result to assume its implication from a statutory provision that merely states that the statute does not prohibit the subrogee from asserting a property damage claim. Nor is there any fix for this result—such as an automatic shift of authority two months before expiration of applicable limitations periods—that would not require this Court to engage in legislation.

It is simple enough to state that the subrogee may not sue independently for medical benefits if that is what the Legislature intended. Similarly, if the Legislature intended to authorize a separate suit for property damage that can be simply done as well. What we find, however, is only a statement that the statute "does not prohibit" a suit for property damage. Whatever this means as to property damage, we cannot conclude that the Legislature intended by such an oblique approach to forfeit the rights of the subrogee under some circumstances.

### G. *Conclusion.*

In sum, we conclude that an insurer as subrogee of some but not all of its insured's personal injury claims may not sue independently to enforce the subrogated claim prior to resolution of its insured's remaining claims in the absence of an agreement with its insured granting explicit and unequivocal authority to initiate a lawsuit that selects a single forum for resolution of both the insured's and insurer's claims. At bottom this amounts to no more than an affirmation that unless the parties agree otherwise, the in-

---

**15.** Where the loss ultimately landed is not disclosed from the opinion. Conn apparently undertook to remit any recovery for the vehicle to

his insurer. 527 N.E.2d at 180–81. If that occurred and nothing more, the insurer achieved a double recovery.

sured is entitled to control adjudication of its rights and the insurer, although entitled as a matter of equity to reimbursement, is a secondary player whose rights derive from its insured and are not independent of them. *See Smith v. Midwest Mut. Ins. Co.,* 154 Ind.App. 259, 270, 289 N.E.2d 788, 794 (1973) (denying insurer's motion to intervene in its insured's lawsuit on ground that "a liability insurer has no duty or right to control its insured's independent action against a tortfeasor"); *but cf. Vernon Fire & Cas. Ins. Co. v. Matney,* 170 Ind.App. 45, 351 N.E.2d 60 (1976) (holding that insurer who failed to intervene in its insured's lawsuit against tortfeasor was bound by judgment on liability and damage issues and could not raise contractual defenses). Any other rule would encourage, or at least permit, unnecessary lawsuits by insurers to enforce subrogation rights. Because Erie here sued Kellenberger without George's consent and prior to some final resolution by George, the lawsuit is impermissible. Accordingly, the $4260 held by the trial court in interpleader is to be held in trust by George until settlement or final resolution of the claim against Kellenberger, if this has not already occurred. T.R. 19(E)(3).

### III. Sufleta's Motion for Attorney's Fees

■ Erie contends that Sufleta is entitled to nothing for the recovery of the interpleaded funds from Kellenberger because he expended no effort to secure them. As the Court of Appeals concluded, whether an insured or its counsel's efforts led to a recovery or settlement for purposes of awarding attorney's fees under the insurer subrogation statute is a question of fact to be determined based on the particular circumstances of each case.[16] Here we voice no opinion on Sufleta's role, if any, in obtaining the settlement from Kellenberger, or how that role would fit under his fee arrangement with George. These are determinations for the trial court.

Amicus curiae Insurance Institute of Indiana argues that the statute is wholly inapplicable where the insurer subrogee actively pursues its independent claim. We do not agree. We agree with the Institute that the statute applies and creates an obligation to contribute to amounts "resulting from" the insured's efforts at collection. However, that presents a factual issue of whose efforts resulted in what. If, as the Trial Rules plainly permit, Erie and George had sued jointly to recover for George's personal injuries and Erie's subrogated claim for medicals, there would still remain the issue of whose efforts produced what recovery. One can imagine situations where the tortfeasor's liability is clear and the amount of medicals is fixed, but the amount of personal injury damages is hotly contested. The contribution of the insured to the subrogee's medical payment might then be negligible or zero. At the other extreme, liability may be the only issue, but property damage and medicals in fixed amounts are the bulk of the recovery. We identify these possibilities not to express a view as to their resolution, but only to emphasize that the trial court may be faced with a wide range of factual determinations in arriving at a proper "pro rata" sharing of amounts "resulting from" the insured's efforts.[17]

16. This disposes of Erie's argument that Sufleta is collaterally estopped from litigating the issue of attorney's fees. As the Court of Appeals concluded: "[E]ach case turns on its own facts, rendering collateral estoppel inapplicable." *Erie,* 658 N.E.2d at 954 n. 1.

17. The Institute also appears to contend that lawyers for insured tort creditors might reap a windfall or double recovery if insurers wait to enforce subrogation rights against the proceeds of a settlement or judgment. The Institute reasons that attorney's fees would have to be paid to the insured's counsel on (1) the insurer's original medical payments under the policy; and (2) the subrogated proceeds recovered in the settlement or judgment, amounting to a double recovery of attorney's fees for no additional benefit to the insured. The Institute suggests this adds to the overall cost of resolving this dispute to the detriment of insureds in the form of higher premiums. In contrast to the Institute's suggestion, the Indiana Trial Lawyers Association, also as amicus curiae, states that in the normal working of the statute, there is no such duplicate fee collected by the attorney when the insured alone recovers from the tortfeasor and remits to the subrogee. Rather, ITLA contends "the insured gets the benefit, not the insured's attorney." The effect under this view is to shift a portion of the attorney's fee from the insured to the subrogee, but not to increase the fee. The record does not disclose Sufleta's fee agreement with George and we cannot determine whether there is any substance to the Institute's contention in this case.

### Conclusion

This case is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., concurs in result and concurs in the opinion except as to subsection F and those parts of the opinion dependent upon that subsection, believing it to be the intent of the legislature to prohibit an insurer with a subrogated personal injury claim from pursuing the claim in the insurer's own name at least in the circumstances presented in this case.

We note that Indiana Professional Conduct Rule 1.5(a) requires fees to be reasonable and that clear written communication of their calculation is required by Rule 1.5(c) if the fee is contingent.