

**FILED**

Mar 07 2018, 5:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin L. Moyer
Moyer Law Firm, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Richard K. Milam
Lebanon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hoosier Insurance Company, <br> *Appellant,* <br><br> v. <br><br> Nicole R. Riggs and Michael J. Riggs, <br> *Appellees.* | March 7, 2018 <br><br> Court of Appeals Case No. 06A01-1708-CT-1969 <br><br> Appeal from the Boone Superior Court <br><br> The Honorable Matthew C. Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1704-CT-416 |

**Barnes, Judge.**

## Case Summary

Hoosier Insurance Company ("Hoosier") appeals the trial court's order of dismissal entered in favor of Nicole R. Riggs and Michael J. Riggs ("the Riggses"). We reverse and remand with instructions.

## Issue

The sole issue before us is whether the trial court erred in dismissing Hoosier's subrogation claim because Hoosier was not a real party in interest for purposes of pursuing a breach of contract claim against the Riggses.

## Facts

During the relevant period, Frank and Leah Harker ("the Harkers") owned real property ("the Premises") in Lebanon. The Premises were insured under an insurance policy underwritten by Hoosier. In June 2013, the Harkers leased the Premises to the Riggses pursuant to a written agreement ("Lease"). Dustin Blevins also resided on the Premises during the Riggses' lease term. On April 22, 2015, the Premises sustained $42,497.27 in fire damage after Blevins allegedly left burning incense unattended. The Lease provided, in part, as follows:

> 5.     Use and Occupancy.  [The Riggses] shall use the Leased Premises only for residential purposes and shall comply with all federal, state and local laws and ordinances.  [The Riggses] shall commit no waste thereon, and shall deliver the premises to [the Harkers] at the end of the lease term in as good of condition as when the lease commenced, normal wear and tear excepted. . . .
>
> * * * * *
>
> 7.     Insurance.  [The Riggses are] responsible for obtaining fire and extended coverage, including public liability[ ] insurance with [the Harkers] to be listed as an additional insured under the policy.  [The Riggses] shall also be responsible for renter's

coverage on [the Riggses'] own personal property located on the Leased Premises. [The Riggses] shall indemnify and hold [the Harkers] harmless from all claims of thi9rd [sic] parties for bodily injury, property damage or death arising from [the Riggses'] use or occupancy of the Leased Premises.

App. Vol. II pp. 9-10. After the fire, Hoosier paid $42,497.27 to or on behalf of the Harkers for repairs to the Premises.

[4] On April 20, 2017, Hoosier filed a complaint for damages against the Riggses alleging breach of contract.[1] Hoosier alleged that the Riggses had materially breached the Lease, causing $42,497.27 in damages. On April 27, 2017, the Riggses moved to dismiss on Indiana Trial Rule 12(B)(6) grounds, arguing that Hoosier was not a "landlord" as defined in Indiana Code Section 32-31-3-3 and, therefore, was not a Trial Rule 17(A) "real party in interest" entitled to pursue a breach of contract claim against the Riggses. On May 19, 2017, the trial court granted the Riggses' motion to dismiss. Hoosier now appeals.

## Analysis

[5] Hoosier argues that the trial court erred in granting the motion to dismiss because, by paying damages to or on behalf of the Harkers, Hoosier became subrogated to the Harkers' landlord rights, including their right to seek damages from the Riggses for breach of the Lease. The Riggses counter that Hoosier's subrogation claim was properly dismissed because Hoosier is not a "real party

---

[1] Hoosier also brought a negligence claim against Blevins.

in interest" pursuant to Indiana Trial Rule 17(A), which provides that "[e]very action shall be prosecuted in the name of the real party in interest."[2] We restate the issue before us as follows: When a landlord's insurer pays insurance benefits to or on behalf of its insured (the landlord), does the landlord's right to pursue damages for breach of contract from the liable party (i.e., a negligent tenant) inure to the insurer, such that the insurer is a "real party in interest" for purposes of pursuing subrogation relief?

[6] A motion to dismiss under Trial Rule 12(B)(6) tests the legal sufficiency of the plaintiff's claim, not the facts supporting it. *Thornton v. State,* 43 N.E.3d 585, 587 (Ind. 2015). Dismissals are improper under Rule 12(B)(6) "unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." *State v. American Family Voices, Inc.,* 898 N.E.2d 293, 296 (Ind. 2008) (citations omitted). We review rulings on a Rule 12(B)(6) motion to dismiss de novo, with no deference to the trial court's decision. *Liberty Landowners Ass'n, Inc. v. Porter Cnty. Comm'rs*, 913 N.E.2d 1245, 1249 (Ind. Ct. App. 2009); *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.,* 3 N.E.3d 1, 4 (Ind. 2014). In reviewing the complaint, we take the alleged facts to be true and consider the allegations in the light most favorable to the

---

[2] A real party in interest is the person who is the true owner of the right sought to be enforced. *Hammes v. Brumley,* 659 N.E.2d 1021, 1030 (Ind. 1995). He or she is the person who is entitled to the fruits of the action. *Id.*

nonmoving party, drawing every reasonable inference in that party's favor. *Veolia Water Indianapolis, LLC,* 3 N.E.3d at 4-5.

[7] The equitable doctrine of subrogation "applies whenever a party, not acting as a volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable." *Erie Ins. Co. v. George,* 681 N.E.2d 183, 186 (Ind. 1997). The ultimate purpose of the doctrine, as with other equitable principles, is to prevent unjust enrichment. *Id.*

> Because subrogation is an equitable remedy, in determining whether an insurer may bring a subrogation action in a particular case, courts must weigh "the principles of equity and good conscience." *RAM Mut. Ins. Co. v. Rohde,* 820 N.W.2d 1, 16 (Minn. 2012) (citing *Dix Mut. Ins. Co. v. LaFramboise,* 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622, 626 (1992) (explaining that the equities of the case should be considered in addition to examining "the provisions of the lease as a whole [and] the reasonable expectations of the parties")); *Am. Family Mut. Ins. Co.,* 757 N.W.2d at 595 (allowing landlord's insurer to maintain a subrogation action against tenant's liability insurer after examining the lease and "[c]onsidering the equitable underpinnings of subrogation"). When the insurer claims a right through subrogation, it stands in the shoes of the insured and takes no rights other than those which the insured had.

*LBM Realty, LLC v. Mannia,* 19 N.E.3d 379, 386 (Ind. Ct. App. 2014) (internal citation omitted).

[8] There are "three different approaches used by courts across the country to address subrogation claims of landlords' insurers against negligent tenants":

(1) the no-subrogation (or implied co-insured) approach (i.e., the "*Sutton* rule"), in which, absent an express agreement to the contrary, a landlord's insurer is precluded from filing a subrogation claim against a negligent tenant because the tenant is presumed to be a co-insured under the landlord's insurance policy; (2) the pro-subrogation approach, in which, absent an express term to the contrary, a landlord's insurer is allowed to bring a subrogation claim against a negligent tenant; and (3) the case-by-case approach, in which courts determine the availability of subrogation based on the reasonable expectations of the parties under the facts of each case.

*Id.* at 383 (quoting *LBM Realty, LLC v. Mannia,* 981 N.E.2d 569, 573 (Ind. Ct. App. 2012)).

[9] The *Mannia* panel advocated that Indiana should adopt the case-by-case approach, "finding that a tenant's liability to the landlord's insurer for damage-causing negligence depends on the reasonable expectations of the parties to the lease as ascertained from the lease as a whole and any other admissible evidence." 19 N.E.3d at 393-94. The panel further reasoned:

Although the case-by-case approach is said to provide less predictability than either the pro- or no-subrogation approaches, we find that this approach best effectuates the intent of the parties by simply enforcing the terms of their lease. In determining the expectations of the parties as articulated in the lease, courts should look for evidence indicating which party agreed to bear the risk of loss for a particular type of damage. For instance, if the lease indicates that the landlord has agreed to procure insurance covering a particular loss, a court "may properly conclude that, notwithstanding a general 'surrender in good condition' or 'liability for negligence' clause in the lease," the landlord and tenant reasonably expected "that the landlord

would look only to the policy, and not to the tenant, for compensation for . . . loss[es] covered by the policy." Likewise, if a lease obligates a tenant to procure insurance covering a particular type of loss, such a provision will provide evidence that the parties reasonably anticipated that the tenant would be liable for that particular loss, which would allow another insurer who pays the loss to bring a subrogation action against the tenant.

*Id.* at 394 (internal citations omitted).

In *Mannia*, a fire loss occurred to the insured premises—a multiunit apartment building. The landlord's insurer, LBM Realty ("LBM"), paid benefits to or on behalf of its insured and subsequently sought subrogation relief from the tenant—Mannia. Mannia moved for summary judgment, which was granted. Although these cases are factually distinguishable in that the insured premises was a multiunit building,[3] the *Mannia* panel's reasoning is apposite.

In analyzing whether Mannia was liable to LBM for negligence-caused fire damage, the *Mannia* panel considered the following provisions within the parties' lease: (1) "[LBM] recommends [Mannia] obtain renter's insurance"; and (2) "[Mannia is liable for] any injury or damage done to the Leased Premises, common areas or any other property of [LBM]". *Id.* at 395. The panel also addressed an omission from the lease noting,

---

[3] *Mannia* provides that "with regard to tenants in a multiunit dwelling, . . . absent clear notice—ideally in the form of an unambiguous, enforceable lease provision—that a negligent tenant will be held liable for damages to areas of the building *beyond the tenant's leased premises,* such liability would not be within the tenant's reasonable expectations and is therefore barred." *Mannia,* 19 N.E.3d at 394 (emphasis in original).

. . . [T]here is no clear and enforceable lease provision putting Mannia on notice that she would be held liable for damage caused by negligence to areas of the multiunit apartment building beyond the leased premises (and should obtain liability insurance to provide for that possibility).

*Id*. Lastly, the panel considered Mannia's prior deposition testimony that: (1) although she was told that LBM had insurance coverage for the building, she was notified that she was still obligated to obtain renter's insurance; and (2) she did not believe, when she executed the lease, that she would be covered under LBM's insurance policy.

[12] In light of the evidence, as to fire loss to areas beyond the leased premises, the *Mannia* panel upheld the trial court's entry of summary judgment in favor of Mannia; however, with respect to damage of the leased premises, the panel found that the trial court had erred in granting summary judgment in Mannia's favor. Accordingly, the *Mannia* panel remanded to the trial court with instructions "to engage in the analysis of the case-by-case approach" as follows:

> First, that the court should consider the lease and any other relevant and admissible evidence, including . . . the insurance maintained by each party as evidence of each party's expectations with respect to liability for damage to the leased premises. Second, because subrogation is an equitable remedy, the trial court must also weigh "the principles of equity and good conscience" . . . . In sum, the trial court should analyze all relevant and admissible evidence in order to determine the parties' expectations and should weigh and balance the equities of the case—as well as addressing the issue of Mannia's negligence—in order to determine Mannia's liability for the damage to the leased premises.

*Id*. at 395-96 (internal citations omitted).

[13] Applying the case-by-case approach to addressing subrogation claims of landlords' insurers against negligent tenants, and upon review of the Lease to determine the parties' expectations with respect to liability for damage to the Premises, we cannot say that it appears to a certainty on the face of the complaint that Hoosier is not entitled to any relief on the related threshold questions of (1) whether the Lease manifests the parties' intent regarding the appropriate party to bear the risk of fire loss; and (2) whether the Harkers' right to pursue damages for breach of contract from the Riggses inures to Hoosier, such that Hoosier is a real party in interest entitled to pursue subrogation relief. *See Mannia*, 981 N.E.2d at 394 ("[I]f a lease obligates a tenant to procure insurance covering a particular type of loss, such a provision will provide evidence that the parties reasonably anticipated that the tenant would be liable for that particular loss, which would allow an[ ] insurer who pays the loss to bring a subrogation action against the tenant.").

[14] Based upon the foregoing, we reverse the trial court's judgment dismissing Hoosier's subrogation claim and remand for further proceedings. On remand, the trial court should analyze the Lease and all other relevant and admissible evidence to determine the parties' expectations; and weigh and balance the equities—including the issue of the Riggses' negligence—to determine the Riggses' liability for the damage to the Premises.

# Conclusion

The trial court erred in dismissing Hoosier's subrogation claim. We reverse and remand with instructions.

Reversed and remanded with instructions.

Najam, J., and Mathias, J., concur.