**Aida E. MARTINEZ, Appellant–Defendant,**

v.

**Michael BELMONTE, Appellee–Plaintiff.**

No. 45A03–0012–CV–453.

Court of Appeals of Indiana.

March 22, 2002.

Theodore J. Blanford, Adam A. Carroll, Hume, Smith, Geddes, Green & Simmons, LLP, Indianapolis, IN, for Appellant.

Terrance L. Smith, Smith & DeBonis, Highland, IN, for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Aida E. Martinez ("Martinez") appeals from a jury verdict and judgment thereon in favor of appellee-plaintiff Michael Belmonte ("Belmonte") in the amount of $375,000.00. We affirm.

### Issues

Martinez raises four issues on appeal, which we restate as the following three:

I.   whether the trial court erroneously denied Martinez's motion to enforce a settlement agreement;

II.  whether the trial court erroneously denied a motion for leave to implead Belmonte's insurer; and

III. whether the trial court erroneously denied Martinez's motion to strike a juror for cause.

### Facts and Procedural History

Belmonte was injured in a traffic accident with Martinez on August 3, 1995, and ultimately lost vision in one eye. Belmonte incurred medical expenses, some of which were paid by his insurer, State Farm Insurance Company ("State Farm"), and some of which were paid by his employer, Lake County, Indiana ("the County"). On May 29, 1996, without Belmonte's knowledge or consent, State Farm sued Martinez for reimbursement of Belmonte's medical expenses ("Suit I"). Martinez's insurer, Go America Auto Insurance ("Go America"), defended Martinez.

After a mediation conference on July 25, 1997, State Farm and Go America settled Suit I for $4,125.00, which Go America paid to State Farm on August 7, 1997. State Farm and Go America filed a joint stipulation of dismissal of Suit I on January 6, 1998.

On August 1, 1997, Belmonte, who had retained his own legal counsel, sued Martinez for negligence ("Suit II"). Go America defended Martinez in Suit II. The County intervened[1] on May 15, 1998, to protect its subrogation rights. On October 15, 1999, Belmonte's attorney sent a letter to Go America offering to settle the case for "[Martinez's] policy limits of $25,000.00." On October 27, 1999, Go America sent a letter to Belmonte's attorney replying that it was willing to settle the claim for $20,875.00, the amount left under Martinez's policy limit after the settlement of Suit I. Belmonte refused the counteroffer. On May 4, 2000, Martinez filed a motion to enforce settlement agreement, claiming that the exchange of letters between Go America and Belmonte had formed a contract. On June 19, 2000, the County filed a motion, in which Martinez joined, for leave to implead[2] State Farm. After a hearing, the trial court denied both motions on August 18, 2000.

Suit II proceeded to jury trial. During voir dire, after exhausting her peremptory challenges, Martinez moved to strike for cause a juror ("Juror Number Eight") who knew a law partner of Belmonte's attorney. The trial court denied Martinez's motion.

On October 3, 2000, the jury rendered a verdict for Belmonte finding that his total damages were $500,000.00 and that he was

---

1.  *See* Ind. Trial Rule 24.

2.  *See* Ind. Trial Rule 20(A).

25% at fault for the accident, resulting in an award of $375,000.00. The trial court entered judgment on the verdict the same day.[3]

On October 5, 2000, Belmonte initiated proceedings supplemental against Martinez. Martinez filed a motion to stay proceedings supplemental, quash garnishment order, and void judgment. After a hearing on February 23, 2001, the trial court denied Martinez's motion.

Martinez now appeals.

### Discussion and Decision

#### I. Settlement Agreement

■ Martinez contends that she and Belmonte entered into an enforceable settlement agreement in the course of Suit II and that the trial court erred in denying her motion to enforce it. "General rules applicable to construction of contracts govern construction of settlement agreements. The interpretation and construction of contract provisions is a function for the courts. On appeal, our standard of review is essentially the same as that employed by the trial court." *Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind.Ct.App.2000) (citations omitted). When determining whether a contract has even been formed, we are mindful that

[a] contract is based upon an offer, acceptance and consideration. An offer must be extended and the offeree must accept it, the communication of acceptance being crucial. It is well settled that in order for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect. This rule is called the "mirror image rule." An acceptance which varies the terms of the offer is considered a rejection and operates as a counteroffer, which may be then accepted by the original offeror.

*I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1034–35 (Ind.Ct.App.1998) (citations omitted), *trans. denied.*

■ Specifically, Martinez contends that Belmonte's offer to settle the case for $25,000.00 was, in fact, an offer to settle the case for the limit of Martinez's insurance policy, and that Go America accepted when it offered to settle the case for $20,875.00, which represents the $25,000.00 policy limit minus the $4,125.00 paid to State Farm to settle Suit I. We conclude that this exchange of letters did not constitute the offer and acceptance required to form a contract. Belmonte asked Go America for "[Martinez's] policy limits of $25,000.00," and Go America's response was to offer to pay $20,875.00. Because

3. On February 23, 1998, Martinez filed a voluntary petition for bankruptcy in the United States District Court for the Northern District of Indiana. She failed to list Belmonte as a creditor, and no notice of the petition was given to any of the parties or the trial court. Martinez received her discharge order from the bankruptcy court on June 19, 1998, and the bankruptcy court closed her case on July 19, 1998. The trial court and Belmonte did not receive notice of the bankruptcy proceedings until after the completion of the trial.

In her appellate brief, Martinez contended that, because she obtained an automatic stay and a discharge of her debts from the bankruptcy court, Belmonte's claim is void, and

Indiana state courts no longer have jurisdiction to hear it. The general rule in Indiana is that "a complaint filed in violation of an automatic stay is null and void." *Zollman v. Gregory*, 744 N.E.2d 497, 499 (Ind.Ct.App. 2001), *trans. denied.* However, in an order issued December 13, 2001, the bankruptcy court modified its discharge, declaring that Belmonte could proceed to enforce his judgment against Martinez. As Martinez concedes in her reply brief, federal courts have exclusive jurisdiction over bankruptcy, and neither this court, nor any other state court, can question the bankruptcy court's retroactive alteration of Martinez's discharge.

Go America's response varied from the terms of Belmonte's offer, it operated as a rejection and counteroffer. Belmonte did not accept this counteroffer, and therefore no contract was formed. Because no contract was formed, the trial court did not err in denying Martinez's motion to enforce settlement agreement.

### II. Impleader of State Farm

Martinez contends that the trial court erred in denying the joint motion for leave to implead State Farm. For us to reach the result desired by Martinez, we must be convinced that (A) State Farm's settlement agreement with Go America of Suit I is void and that (B) State Farm is a necessary party to Suit II pursuant to Indiana Trial Rule 19(A) and must be impleaded with the $4,125.00 it collected from Go America in settlement of Suit I.[4]

### A. Suit I and the Settlement Agreement

■ The parties[5] direct us to *Erie Ins. Co. v. George*, 681 N.E.2d 183 (Ind.1997), an opinion our supreme court issued on May 30, 1997, after State Farm initiated Suit I, but before it reached a settlement agreement with Go America. *Erie's* holding reads in relevant part:

> In sum, we conclude that an insurer as subrogee of some but not all of its insured's personal injury claims may not sue independently to enforce the subrogated claim prior to resolution of its

insured's remaining claims in the absence of an agreement with its insured granting explicit and unequivocal authority to initiate a lawsuit that selects a single forum for resolution of both the insured's and insurer's claims. At bottom this amounts to no more than an affirmation that unless the parties agree otherwise, the insured is entitled to control adjudication of its rights and the insurer, although entitled as a matter of equity to reimbursement, is a secondary player whose rights derive from its insured and are not independent of them. Any other rule would encourage, or at least permit, unnecessary lawsuits by insurers to enforce subrogation rights.

*Erie*, 681 N.E.2d at 193–94 (citations omitted). However, *Erie* does not apply in the instant case because there is no longer a lawsuit to void: we cannot now void Suit I because it was dismissed after settlement over four years ago.

Instead, because State Farm and Go America settled Suit I, the governing case is *Harrison v. State Farm Mut. Auto. Ins. Co.*, 164 Ind.App. 569, 330 N.E.2d 126 (1975), *trans. denied*, the result of which was specifically approved by the *Erie* court. In *Harrison*,

> the plaintiffs were injured in an automobile accident and received medical payments under their own insurance policy from State Farm. In accordance with the policy, the plaintiffs executed a

---

**4.** We note that even if we were to conclude that the trial court erred in denying the joint motion for leave to implead State Farm, we cannot understand how Martinez would benefit. The *County* is the party that might have subrogation rights as against State Farm, and the County has not appealed the denial of the motion for leave to implead State Farm.

**5.** Belmonte also contends that the Suit I settlement is void under *Erie*, but urges that result for another reason. Starting with Belmonte's premise that the Suit I settlement is

void, it would follow, then, that Go America was not *obligated* to pay State Farm the $4,125.00 it agreed to pay in the settlement; thus, its payment was voluntary. If the payment was voluntary, Belmonte reasons, it did not reduce Martinez's policy limit, and there is still $25,000.00 available instead of $20,875.00. Because the Suit I settlement is not void, however, we cannot accept Belmonte's argument that Go America's payment was voluntary.

"medical trust agreement" subrogating to State Farm a right of reimbursement. The plaintiffs then hired their own counsel to prosecute the claim. Before counsel filed suit, the tortfeasor's insurer, bypassing counsel, sent State Farm a check for $1000 as reimbursement for the payments. The plaintiffs' counsel demanded that State Farm turn over the $1000 to plaintiffs. State Farm refused and counsel filed suit. The Court of Appeals held that State Farm's action in independently obtaining the $1000 by agreement was permissible under the "medical trust agreement." We agree that the tortfeasor ... may agree with the subrogee insurer ... to remit the amount of medical payments. However, *Harrison* does not hold that if no agreement could be reached, the subrogee could have sued before resolution of the insured's claim.

*Erie*, 681 N.E.2d at 190–91 (emphasis added) (footnote omitted). As in *Harrison*, we see no reason here that the tortfeasor (Martinez via Go America) could not have agreed with the subrogee insurer (State Farm) to remit the medical payments State Farm made to Belmonte. In summary, we cannot void Suit I because it has already been dismissed, and we cannot void the settlement agreement between State Farm and Go America arising out of Suit I when *Erie* and *Harrison* specifically allow for such settlement agreements.

### B. State Farm as Necessary Party

■ It is undisputed that State Farm and Belmonte had a subrogation relationship, and that State Farm had a right to recoup the medical payments it made on Belmonte's behalf. Martinez contends that State Farm should now be joined to Suit II under Indiana Trial Rule 19(A) because State Farm claims an interest relating to the subject of the action and that disposition of the action in State Farm's absence would subject Martinez to a substantial risk of multiple obligations.[6] *See* T.R. 19(A)(2).

However, because the Suit I settlement is not void, State Farm has fully protected its subrogation interest arising from Belmonte and Martinez's accident, and it no longer has any interest in the subject of Suit II. State Farm cannot now be joined because it no longer "claims an interest relating to the subject of the action." *Id.*

### III. Motion to Strike Juror Number Eight

■ Martinez contends that the trial court erroneously denied her motion to strike for cause Juror Number Eight, who was acquainted with a law partner of Belmonte's attorney. The scope of our review of the denial of a motion to strike for cause is limited:

Whether to excuse a juror for cause rests within the sound discretion of the trial court. We will sustain the trial court's decision unless it is illogical or arbitrary. A juror's bias may be actual or implied. Implied bias, which also allows removal of a juror for cause, is attributed to a juror upon a finding of a relationship between the juror and one of the parties, regardless of actual partiality.

*Joyner v. State*, 736 N.E.2d 232, 238 (Ind. 2000) (citations and internal quotation marks omitted).

---

6. In her appellate brief, Martinez mischaracterizes the relationship between State Farm and Belmonte: State Farm was the *subrogee* and Belmonte the *subrogor*. *See* BLACK'S LAW DICTIONARY 1441 (7th ed.1999) (defining subrogee as "[o]ne who is substituted for another in having a right, duty, or claim. ● An insurance company frequently becomes a subrogee after paying a policy claim...."); *id.* (defining subrogor as "[o]ne who allows another to be substituted for oneself as creditor, with a transfer of rights and duties.").

■ In the instant case, we cannot conclude that the trial court abused its discretion. Before the trial court denied Martinez's motion to strike, the following exchange took place:

THE COURT: Okay. [Juror Number Eight] you raised your hand. You have something else?

[Juror Number Eight]: I do know [Belmonte's attorney's] law partner.

THE COURT: Okay. And you know him personally?

A. Yes.

BY THE COURT:

Q. Would the fact that you know him personally [a]ffect your ability to be fair in this case?

A. Well, I would like to think I would be fair but I feel I'm in a[n] unfair position because I do know him. (Inaudible.)

THE COURT: You want to ask her one more question. All right.

Q. Would you be able to put aside the fact that you know [Belmonte's attorney's partner] personally and decide this case on the evidence and not on whether or not, you know, how you feel about [Belmonte's attorney's partner]?

A. I would hope I would be able to I feel positive about [Belmonte's attorney's partner]. I don't feel negative. I (inaudible).

Q. Would you be able to decide the case based on the evidence without regard to how you feel about [Belmonte's attorney's partner]?

A. I think so.

. . . .

BY [Martinez's attorney]:

Q: [Juror Number Eight], given the fact that obviously your husband is an attorney and that you know [Belmonte's attorney's partner] person-

ally, how do you feel about serving on this jury?

A. I do not feel comfortable (inaudible).

Q. And that's a serious doubt that you have in your mind that you might be [a]ffected by those feelings?

A. Yes.

[Martinez's attorney]: We've definitely got to move for cause now.

. . . .

BY THE COURT:

Q. [Juror Number Eight], now I think all the lawyers in here know your husband. I know I have known him since I started practicing law. The point is regardless of your concerns about [Belmonte's attorney's partner] and any other lawyer in the County, can you be fair to both sides and make a decision based on what the evidence shows and the law as I give it to you and not be concerned about—even though you have a concern, not let that concern prevent you from being fair? Can you be fair without letting whatever concern you have keep you from being fair?

A. Well, I would like to think that I can be fair and objective. (Inaudible).

There is nothing in this exchange to suggest that Juror Number Eight was actually biased in favor of Belmonte or his attorney; the transcript indicates only that she might have felt uncomfortable serving on the jury. We also conclude that her casual relationship with a partner of Belmonte's attorney is insufficient to imply that she was biased in favor of Belmonte. Juror Number Eight was asked twice if she could be fair, and four times if she could decide the case based on the evidence, and she answered in the affirmative each time. The trial court's denial of Mar-

tinez's motion to strike Juror Number Eight for cause was neither illogical nor arbitrary.

In summary, we conclude that Martinez and Belmonte failed to reach a settlement agreement prior to trial in Suit II. Because State Farm no longer has any interest in this litigation, the trial court did not err in denying a motion for leave to implead State Farm. Finally, the trial court did not err in denying Martinez's motion to strike Juror Number Eight for cause.

Affirmed.

RILEY, J., and MATHIAS, J., concur.