**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 15 2013, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCUS M. BURGHER**
Burgher & Burgher, PC
Corydon, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES C. TUCKER**
**MARILYN TUCKER FULLEN**
Tucker & Tucker, P.C.
Paoli, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KENTUCKIANA TRENCH SHORING, LLC,  )
)
    Appellant-Defendant,  )
)
        vs.  )    No.  59A05-1206-PL-315
)
NATIONAL WATER SERVICE, LLC,  )
)
    Appellee-Plaintiff.  )

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable Larry R. Blanton, Judge
Cause No. 59C01-1001-PL-016

**March 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Kentuckiana Trench Shoring, LLC, ("Kentuckiana") appeals from the trial court's judgment in favor of National Water Service, LLC, ("NWS") for breach of contract. Kentuckiana raises multiple issues, but we find the following restated issues dispositive: 1) whether the December 2009 letter from Kentuckiana to NWS formed a new contract between the parties, and 2) whether the trial court had jurisdiction over the matter. Concluding that there was no new contract and that the trial court did not have jurisdiction, we reverse.

## Facts and Procedural History

NWS is an Indiana limited liability company authorized to do business in Kentucky, and Kentuckiana is a Kentucky limited liability company authorized to do business in Indiana. In 2008, the parties entered into a credit application and agreement, which stated "[i]n the event of litigation, the parties agree that exclusive jurisdiction and venue shall be in Louisville, Kentucky-Jefferson County." Defendant's Exhibit 6. On May 5, 2009, NWS entered into a contract with Kentuckiana for the specific purpose of renting three pieces of equipment. Pursuant to the terms of the agreement, Kentuckiana could take immediate possession of the leased equipment without notice to NWS if NWS failed to pay any amount owed when due. On that same day, the parties also entered into a purchase option contract giving NWS the option of purchasing the same three pieces of equipment if six lease payments were paid by October 25, 2009. NWS did not pay the total amount it owed under the rental contract and purchase option contract by October 25.

A dispute arose between the parties, and representatives from each side met on December 23, 2009, in an attempt to resolve that dispute. During that meeting, the president and CEO of NWS presented Kentuckiana with two options. The first option proposed was that NWS would pay $19,547.88 that day as full and complete satisfaction for the rental contract between the parties and that NWS would take possession of the leased equipment along with other pieces of accessory equipment. The second option proposed was that NWS would pay $15,847.20 that day, would do no more business with Kentuckiana, and would take possession of the leased equipment but not the accessory equipment. The representative from Kentuckiana neither accepted nor rejected either one of the two proposals at the meeting. Instead, on December 27, 2009, Kentuckiana responded by letter. The letter stated:

> This letter is in regards to the three outstanding RPO contracts for rental contract #01266. Five of the six RPO invoices are currently paid to date. However, per paragraph five of the RPO contracts, in order to exercise the purchase option the customer's account must be current, and all RPO invoices paid in full.
> On numerous occasions, [Kentuckiana] has contacted [NWS] in regards to the past due account, and the requirements to finalize the three outstanding RPO contracts. The final invoices and the account have yet to be paid current.
> [NWS] has until 4:00 PM EST Wednesday, January 6, 2010 to bring their account current ($15,847.20) per the attached statement if the purchase option is to be exercised. If [Kentuckiana] has not received the payment by the aforementioned time, [NWS] will forfeit the purchase options, and the contract will continue as a rental agreement only.

Appellant's Appendix at 117. Kentuckiana took possession of the leased equipment on January 4, 2010.[1] NWS had not paid its account at that time.

---

[1] Kentuckiana alleged that it had been informed that NWS intended to relocate the leased equipment in violation of the terms of the original contract under which NWS was not allowed to use the equipment at a location other than the one in the contract without prior consent from Kentuckiana.

NWS filed suit against Kentuckiana in Orange County, Indiana. After a bench trial, the trial court found that the December 27, 2009, letter was an acceptance by Kentuckiana of an offer made by NWS, constituting a new contract that served as a novation. The trial court further found that because that the new contract extinguished the terms of the old agreement which vested jurisdiction in Jefferson County, Kentucky, it could exercise jurisdiction over the matter. The trial court found that Kentuckiana breached the new contract and entered judgment in favor of NWS in the amount of $40,415.80. Kentuckiana now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Standard of Review

In reviewing an order in which the trial court makes findings of fact and conclusions of law, our standard of review is well-settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010) (citation omitted), trans. denied.

### II. Novation

4

The trial court found that the December 2009 letter from Kentuckiana to NWS constituted an acceptance of one of the two offers proposed by NWS at the meeting that took place a few days prior. Because there was an offer and acceptance, as well as consideration, the trial court found that a new contract had been formed, serving as a novation and extinguishing any prior agreements between the parties.[2] We disagree.

"A novation requires: (1) a valid existing contract; (2) the agreement of all parties to a new contract; (3) a valid new contract; and (4) an extinguishment of the old contract in favor of the new one." Ashbaugh v. Horvath, 859 N.E.2d 1260, 1265 (Ind. Ct. App. 2007). The evidence does not support the finding that there was a valid new contract, that there was an agreement of all parties to a new contract, or that there was an extinguishment of the old contract in favor of the new one.

The December 2009 letter was not an acceptance of an offer made by NWS. The terms outlined in the letter did not mirror the terms set forth in either of the two offers made by NWS in the meeting. "It is well settled that in order for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect. This rule is called the 'mirror image rule.'" Martinez v. Belmonte, 765 N.E.2d 180, 183 (Ind. Ct. App. 2002) (citation omitted). The trial court found that the letter was an acceptance of the second option proposed by NWS at the meeting. However, that offer involved paying $15,847.20 that day, doing no more business with Kentuckiana, and taking

---

[2] The trial court also found that even if there was no new contract, the elements of promissory estoppel were satisfied. However, the parties do not raise the promissory estoppel issue on appeal. Further, because we conclude that no new contract was formed, we do not have jurisdiction to resolve the dispute due to the prior agreement between the parties, as we will discuss in part III, and cannot address the promissory estoppel issue.

ownership of the leased equipment. The letter, on the other hand, gave NWS until January 6 to make payment and did not state that the parties would no longer do business, but instead stated that if payment was not received by January 6, while the purchase options would be forfeited, the contract would continue as a rental agreement. Thus, the terms did not match and the letter did not serve as an acceptance. See id. at 183-84 (holding that because the price in the offer and acceptance varied, the acceptance operated as a rejection and counteroffer and no contract was formed).

Not only did the terms of the December 2009 letter differ from the terms of the offer, they corresponded to the terms in the original contracts except for providing an extension of the deadline from October 25 to January 6. Thus, the parties did not agree to a new contract. The intent of the parties to extinguish an old contract is essential to finding that a novation has been formed:

> [w]here a subsequent agreement lacks any language, either express or implied, which indicates an intention to create a novation, relieve contractual liabilities, substitute parties, or extinguish the old contract, we will not conclude that a party to the first contract has waived its right to sue for breach of the first contract.

Ashbaugh, 859 N.E.2d at 1265. Here, the December 2009 letter does not contain any language that would indicate that the parties intended to extinguish the old contracts. To the contrary, the December 2009 letters refers to the "past due account" and the previous contracts throughout. The letter, on its face, reads as giving NWS one final chance to exercise the purchase option under the original contracts. The trial court erred in finding that the December 2009 letter formed a new contract between the parties.

6

## III. Jurisdiction

Parties are free to negotiate and include forum selection clauses in their contracts. These clauses are enforceable as long as they are not induced by fraud, are just and reasonable under the circumstances, are not overreaching to the extent the aggrieved party is deprived of his right to go to court, and are freely negotiated. Farm Bureau Gen. Ins. Co. of Mich. v. Sloman, 871 N.E.2d 324, 329 (Ind. Ct. App. 2007), trans. denied. Here, the parties signed an agreement which vested jurisdiction in Jefferson County, Kentucky, in the case of any dispute. Also, all of the agreements signed by the parties stated that they were "governed by and constructed in accordance with the laws of the State of Kentucky." Defendant's Exh. 7; Appellant's App. at 116. NWS does not dispute this nor does it claim that the forum selection clause is unjust, induced by fraud, or not freely negotiated, but instead relies on the trial court's finding that it had jurisdiction over the matter because the novation extinguished all prior contracts or agreements between the parties, including the one stating that any dispute would be resolved in Jefferson County, Kentucky.

Because we reverse the trial court's finding that a novation was formed by the December 2009 letter, the original contracts between the parties are still in effect. Thus, we hold that Indiana courts do not have jurisdiction to resolve the dispute between the parties. Even though it would appear Kentuckiana extended its due date to January 6 before it took action, Indiana does not have jurisdiction to decide that issue or award damages to NWS. NWS must bring any future suit in Jefferson County, Kentucky, as set forth in the parties' agreement.

<u>Conclusion</u>

Kentuckiana's December 2009 letter did not form a new contract and the trial court did not have jurisdiction to settle the dispute between the parties. We therefore reverse the trial court's judgment in favor of NWS.

Reversed.

MAY, J. and PYLE, J., concur.